## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
                                    )
AMERICAN-ARAB ANTI-                 )
DISCRIMINATION COMMITTEE            )
                                    )
          Plaintiff,                )
                                    )
     v.                             )     Civil Action No. 1:17-cv-00708-CRC
                                    )
U.S. CUSTOMS AND BORDER             )
PROTECTION,                         )
                                    )
          Defendant.                )
———————————————————————)

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant U.S. Customs and Border Protection fully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7.  The reasons for this motion are set forth in the attached memorandum of points and authorities in support of Defendant's motion, the statement of material fact as to which there is no genuine dispute, and the declaration of Patrick Howard.  A proposed order is also attached.

Dated: February 19, 2018

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ Kari E. D'Ottavio
KARI E. D'OTTAVIO
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tel.: (202) 305-0568
Fax: (202) 616-8470
kari.e.d'ottavio@usdoj.gov

*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

AMERICAN-ARAB ANTI-
DISCRIMINATION COMMITTEE

       Plaintiff,

       v.

U.S. CUSTOMS AND BORDER
PROTECTION,

       Defendant.

_____

Civil Action No. 1:17-cv-00708-CRC

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

BACKGROUND...................................................................................................................1

I.      CBP's Global Entry Program..................................................................................1

II.     Plaintiff's FOIA Request.........................................................................................2

III.    Plaintiff's Lawsuit and Defendant's Response.......................................................3

STANDARD OF REVIEW...................................................................................................3

ARGUMENT........................................................................................................................4

I.      CBP's Search Was Reasonable, Adequate, and Satisfies Its Obligations Under the
FOIA.......................................................................................................................4

      A.     Legal Standard for Adequacy of the Search...............................................4

      B.     CBP Conducted Adequate Searches for Responsive Records....................6

II.     CBP Properly Withheld Records Under Applicable FOIA Exemptions...................10

      A.     CBP Properly Withheld Privileged Information Under Exemption 5....................11

      B.     CBP Properly Withheld Personal Information Under Exemptions 6 and 7(C).....14

      C.     CBP Properly Withheld Law Enforcement-Sensitive Information Under
Exemption 7(E)...........................................................................................17

      D.     CBP Released All Reasonably Segregable, Non-Exempt Materials......................22

III.    The Court Lacks Jurisdiction over Plaintiff's Expedited Processing Claim......................23

CONCLUSION.....................................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*ACLU v. U.S. Dep't of Justice,*
   655 F.3d 1 (D.C. Cir. 2011) ................................................................................... 15

*Ahmed v. U.S. Citizen & Immigration Servs.,*
   No. 11-cv-6230, 2013 WL 27697 (E.D.N.Y. Jan. 12, 2013) ................................... 20

*Ancient Coin Collectors Guild v. U.S. Dep't of State,*
   641 F.3d 504 (D.C. Cir. 2011) ................................................................................. 5

*Atkins v. U.S. Dep't of Justice,*
   No. 90-5095, 1991 WL 185084 (D.C. Cir. Sept. 18, 1991) ..................................... 23

*Barnard v. U.S. Dep't of Homeland Sec.,*
   598 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................. 20

*Binion v. U.S. Dep't of Justice,*
   695 F.2d 1189 (9th Cir. 1983) ................................................................................. 21

*Blackwell v. FBI,*
   646 F.3d 37 (D.C. Cir. 2011) ................................................................................... 18

*Carter v. U.S. Dep't of Commerce,*
   830 F.2d 388 (D.C. Cir. 1987) ................................................................................. 15

*Chambers v. U.S. Dep't of Interior,*
   568 F.3d 998 (D.C. Cir. 2009) ................................................................................. 5

*Citizens for Responsibility & Ethics in Wash. v. FEC,*
   839 F. Supp. 2d 17 (D.D.C. 2011) ........................................................................... 23

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice,*
   746 F.3d 1082 (D.C. Cir. 2014) ............................................................................... 18

*Coastal States Gas Corp. v. U.S. Dep't of Energy,*
   617 F.2d 854 (D.C. Cir. 1980) ................................................................................. 12

*Competitive Enter. Inst. v. U.S. Envt'l Prot. Agency,*
   12 F. Supp. 3d 100 (D.D.C. 2014) ........................................................................... 13

*Concepcion v. U.S. Customs & Border Prot.,*
   907 F. Supp. 2d 133 (D.D.C. 2012), *aff'd,* 550 F. App'x 1 (D.C. Cir. 2012) .......... 15

*Ctr. for Nat. Security Studies v. U.S. Dep't of Justice,*
   331 F.3d 918 (D.C. Cir. 2003) ................................................................................. 21

*Defs. of Wildlife v. U.S. Dep't of Interior*,
  314 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................... 6

*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ............................................................................. 10

*Dow Jones & Co., Inc. v. U.S. Dep't of Justice*,
  917 F.2d 571 (D.C. Cir. 1990) ............................................................................. 11

*Dudman Commc'ns Corp. v. U.S. Dep't of Air Force*,
  815 F.2d 1565 (D.C. Cir. 1987) ........................................................................... 13

*Formaldehyde Inst. v. U.S. Dep't of Health & Human Servs.*,
  889 F.2d 1118 (D.C. Cir. 1989) ........................................................................... 12

*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982) ............................................................................. 4

*Gilman v. U.S. Dep't of Homeland Sec.*,
  32 F. Supp. 3d 1 (D.D.C. 2014) ........................................................................... 20

*GTE Sylvania, Inc. v. Consumers Union of the U.S. Inc.*,
  445 U.S. 375 (1980) ............................................................................................. 10

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ............................................................................. 22

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ............................................................................................. 10

*Juarez v. U.S. Dep't of Justice*,
  518 F.3d 54 (D.C. Cir. 2008) ............................................................................... 22

*Judicial Watch v. Export-Import Bank*,
  108 F. Supp. 2d 19 (D.D.C. 2000) ....................................................................... 12

*Judicial Watch, Inc. v. U.S. Dep't of Defense*,
  715 F.3d 937 (D.C. Cir. 2013) ............................................................................... 4

*Kissinger v. Reporters Comm. for Freedom of the Press*,
  445 U.S. 136 (1980) ............................................................................................. 10

*Landmark Legal Found. v. EPA*,
  272 F. Supp. 2d 59 (D.D.C. 2003) ....................................................................... 23

*Larson v. U.S. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ............................................................................... 4

*Light v. U.S. Dep't of Justice*,
   968 F. Supp. 2d 11 (D.D.C. 2013) ....................................................... 3

*Mapother v. U.S. Dep't of Justice*,
   3 F.3d 1533 (D.C. Cir. 1993) .......................................................... 12

*Marshall v. FBI*,
   802 F. Supp. 2d 125 (D.D.C. 2011) ........................................... 14, 15, 17

*Mayer Brown LLP v. IRS*,
   562 F.3d 1190 (D.C. Cir. 2009) ........................................................ 17

*McCready v. Nicholson*,
   465 F.3d 1 (D.C. Cir. 2006) ............................................................. 5

*Mead Data Central, Inc. v. U.S. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ......................................................... 22

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ........................................................... 5

*Miller v. U.S. Dep't of Justice*,
   872 F. Supp. 2d 12 (D.D.C. 2012) ...................................................... 3

*Moore v. Bush*,
   601 F. Supp. 2d 6 (D.D.C. 2009) ........................................................ 3

*Muttitt v. U.S. Dep't of State*,
   926 F. Supp. 2d 284 (D.D.C. 2013) ................................................... 23

*Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Att'ys*,
   844 F.3d 246 (D.C. Cir. 2016) ......................................................... 11

*Nat'l Sec. Archive v. CIA*,
   752 F.3d 460 (D.C. Cir. 2014) ......................................................... 13

*Nat'l Sec. Archive v. FBI*,
   No. 88-1507, 1993 WL 128499 (D.D.C. Apr. 15, 1993) .............................. 13

*Negley v. FBI*,
   825 F. Supp. 2d 63 (D.D.C. 2011) ..................................................... 17

*Neufeld v. IRS*,
   646 F.2d 661 (D.C. Cir. 1981), *overruled on other grounds*,
   *Church of Scientology of Ca. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986) ................. 22

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ................................................................ 11, 13

iv

*Oglesby v. U.S. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ............................................................................ 10

*Paco v. U.S. Customs and Border Prot.*,
    No. 14-5107, 2016 WL 344522 (D.N.J. Jan. 27, 2016) ...................................... 21

*Painting & Drywall Work Pres. Fund, Inc. v. U.S. Dep't of Housing & Urban Dev.*,
    936 F.2d 1300 (D.C. Cir. 1991) ........................................................................ 14

*People for the Am. Way Found. v. Nat'l Park Serv.*,
    503 F. Supp. 2d 284 (D.D.C. 2007) .................................................................. 13

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ............................................................................ 6

*Petro. Info. Corp. v. U.S. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ........................................................................ 12

*Pfeiffer v. CIA*,
    721 F. Supp. 337 (D.D.C. 1989) ....................................................................... 12

*PHE, Inc. v. U.S. Dep't of Justice*,
    983 F.2d 248 (D.C. Cir. 1993) .......................................................................... 17

*Pratt v. Webster*,
    673 F.2d 408 (D.C. Cir. 1982) .................................................................... 20, 21

*Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundry & Water Comm'n*,
    740 F.3d 195 (D.C. Cir. 2014) .......................................................................... 18

*Reed v. NLRB*,
    927 F.2d 1249 (D.C. Cir. 1991) ........................................................................ 15

*Riccardi v. U.S. Dep't of Justice*,
    32 F. Supp. 3d 59 (D.D.C. 2014) ........................................................................ 6

*Rosenberg v. U.S. Dep't of Immigration & Customs,*
    *Enf't*, 13 F. Supp. 3d 92 (D.D.C. 2014) .............................................................. 5

*Sack v. CIA*,
    49 F. Supp. 3d 15 (D.D.C. 2014) ........................................................................ 4

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ..................................................................... 4, 16

*Schoenman v. FBI*,
    575 F. Supp. 2d 136 (D.D.C. 2008) .................................................................. 17

*Sheffield v. Holder*,
   951 F. Supp. 2d 98 (D.D.C. 2013) ........................................................................ 5

*Simon v. U.S. Dep't of Justice*,
   980 F.2d 782 (D.C. Cir. 1992) .......................................................................... 14

*Soghoian v. U.S. Dep't of Justice*,
   885 F. Supp. 2d 62 (D.D.C. 2012) ..................................................................... 21

*Steinberg v. U.S. Dep't of Justice*,
   23 F.3d 548 (D.C. Cir. 1994) ...................................................................... 3, 4, 5

*Strunk v. U.S. Dep't of State*,
   905 F. Supp. 2d 142 (D.D.C. 2012) ................................................................... 21

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ........................................................................ 22

*Tax Analysts v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002) .......................................................................... 20

*U.S. Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976) ................................................................................... 15

*U.S. Dep't of Defense v. Fed. Labor Relations Auth.*,
   510 U.S. 487 (1994) ................................................................................... 15

*U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ..................................................................................... 11

*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*,
   489 U.S. 749 (1989) ................................................................................... 14

*United States v. Nixon*,
   418 U.S. 683 (1974) ................................................................................... 13

*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ......................................................................... 10

*Washington v. Trump*,
   No. C17-0141JLR, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017) ........................................... 9

*Weisberg v. U.S. Dep't of Justice*,
   745 F.2d 1476 (D.C. Cir. 1984) ...................................................................... 4, 5

*Wilbur v. CIA*,
   355 F.3d 675 (D.C. Cir. 2004) .......................................................................... 5

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ................................................................................................. 4

*Wolfe v. U.S. Dep't of Health & Human Servs.*,
   839 F.2d 768 (D.C. Cir. 1988) ............................................................................................... 12

**<u>Statutes</u>**

5 U.S.C. § 552 ............................................................................................................ *passim*

**<u>Regulations</u>**

8 C.F.R. § 235.12(a) ...................................................................................................... 1, 2

## INTRODUCTION

In this Freedom of Information Act ("FOIA") action, Plaintiff American-Arab Anti-Discrimination Committee ("Plaintiff") seeks from Defendant U.S. Customs and Border Protection ("Defendant" or "CBP") records relating to the operation of CBP's Global Entry program. Defendant has responded by conducting an adequate search of agency records and producing all responsive documents that are not exempt from release under the FOIA. In support of this Motion, Defendant proffers a declaration detailing its searches performed and explaining its withholdings of exempt materials. This Court should accordingly grant Defendant's Motion for Summary Judgment.

## BACKGROUND

### I.   CBP's Global Entry Program

CBP is a component law enforcement agency of the U.S. Department of Homeland Security ("DHS") with statutory responsibility for safeguarding America's borders and facilitating legitimate trade and travel. Within CBP, the Trusted Traveler Programs Office is responsible for the operation of CBP's four Trusted Traveler Programs: Global Entry, NEXUS, SENTRI, and FAST. *See* Declaration of Patrick Howard (hereinafter "Howard Decl.") ¶¶ 14-16; Trusted Traveler Programs, U.S. Customs and Border Protection, https://www.cbp.gov/travel/trusted-traveler-programs. These programs are designed to provide pre-approved, low-risk travelers expedited processing into the United States. *Id.* The Global Entry program, in particular, allows its members expedited entry via designated kiosks at select airports. *See* 8 C.F.R. § 235.12(a) (describing the Global Entry program). The Global Entry program is open to eligible U.S. citizens, U.S. nationals, U.S. lawful permanent residents, and certain nonimmigrant aliens from countries that have entered into specific arrangements with CBP. *See id.* § 235.12(b) (describing Global

Entry program eligibility).  Those who wish to participate in the Global Entry program must apply in advance and undergo a background check and in-person interview.  *See id.* §§ 235.12(d), (e) (describing Global Entry program application, interview, and enrollment).  An individual's Global Entry membership may be revoked if, *inter alia*, CBP, in its discretion, deems such action necessary.  *See id.* § 235.12(j) (describing reasons for Global Entry suspension or removal).

## II.     Plaintiff's FOIA Request

In March 2017, Plaintiff submitted to CBP a FOIA request seeking six categories of information relating to the operation of CBP's Global Entry program.  *See* Howard Decl., Ex. C (Plaintiff's March 9, 2017 corrected FOIA request).  More specifically, the request sought agency records since November 9, 2016 "relating to each revocation, suspension, or termination" of Global Entry memberships, to include records showing "reversal or confirmation of CBP's [Global Entry] revocation decisions by the CBP Ombudsman's office."  *See id.* (Parts 1 and 3).  Plaintiff's request also sought records showing the annual total number of Global Entry revocations, suspensions, or terminations between January 1, 2012 and November 8, 2016.  *See id.* (Part 2).  In addition, the request sought agency records "created on or after November 9, 2016 relating to the suspension, revocation, or termination of [Global Entry]," to include records reflecting any change in CBP's prior practices and policies "with respect to [Global Entry] screening, investigation, or revocation."  *See id.* (Parts 4 and 5).  Finally, Plaintiff's request sought records "created on or after November 9, 2016 relating to operation or functioning of the [Global Entry] program" that contained any of the following words or phrases: "Muslim," "Arab," "Ban," "Muslim Ban," or "Travel Ban."  *See id.* (Part 6).

### III.     Plaintiff's Lawsuit and Defendant's Response

In April 2017, Plaintiff brought suit under the FOIA, 5 U.S.C. § 552, seeking the expedited

processing and release of the requested records.  ECF No. 1.  In its Complaint, Plaintiff alleges

that CBP violated the FOIA by (1) improperly withholding agency records, and (2) unlawfully

denying its request for expedited processing.  *Id.*  Defendant timely answered the Complaint.  ECF

No. 6.  As of February 15, 2018, CBP released to Plaintiff a total of 503 pages of non-exempt

records, or non-exempt portions of records, and 26 Microsoft Excel spreadsheets in native format.

Plaintiff was not charged fees for this response.

### STANDARD OF REVIEW

A court reviews an agency's response to a FOIA request *de novo*.  5 U.S.C. § 552(a)(4)(B).

"FOIA cases are typically and appropriately decided on motions for summary judgment."  *Moore*

*v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  In deciding at the summary judgment stage whether

an agency has fully discharged its obligations under the FOIA, "the agency must show, viewing

the facts in the light most favorable to the requester, that there is no genuine issue of material fact."

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  Generally, an agency is

entitled to summary judgment in a FOIA case if it shows that "its search for responsive records

was adequate, that any exemptions claimed actually apply, and that any reasonably segregable

non-exempt parts of records have been disclosed after redaction of exempt information."  *Light v.*

*U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013) (citation omitted).  "To meet its

burden, a defendant may rely on reasonably detailed and non-conclusory declarations."  *Miller v.*

*U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012).

At summary judgment, "[a]n agency affidavit will be afforded 'substantial weight[] so long

as it . . . is not contradicted by contrary evidence in the record or by evidence of the agency's bad

faith." *Sack v. CIA*, 49 F. Supp. 3d 15, 19 (D.D.C. 2014) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 940-41 (D.C. Cir. 2013)) (alteration in original).  And "[p]lausible, nonconclusory government affidavits 'cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'"  *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).   Moreover, "[a]n agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit."  *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).   "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).  This is not a high bar: "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Id.* at 374-75 (citation omitted).

## ARGUMENT

Defendant is entitled to summary judgment because it has conducted an adequate search for records responsive to Plaintiff's FOIA request and because its withholdings of responsive information are proper under FOIA's exemptions from disclosure.  Moreover, Plaintiff's claim that CBP constructively denied its request for expedited processing is now moot.  Accordingly, this Court should grant summary judgment to Defendant.

## I.   CBP's Search Was Reasonable, Adequate, and Satisfies Its Obligations Under the FOIA

### A.   Legal Standard for Adequacy of the Search

When a requester challenges the adequacy of an agency's search for responsive records, the agency must show that it "has conducted a 'search reasonably calculated to uncover all relevant documents.'"  *Steinberg*, 23 F.3d at 551 (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476,

1485 (D.C. Cir. 1984)).  It is well-settled that an agency's search for responsive records "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).  Consequently, an agency's failure to locate a responsive document does not render the search inadequate, as the question for the court is "not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg*, 745 F.2d at 1485; *see also Rosenberg v. U.S. Dep't of Immigration & Customs Enf't*, 13 F. Supp. 3d 92, 104 (D.D.C. 2014) ("[T]he adequacy of a FOIA search is not to be judged by its results."). Thus, courts have rejected challenges to the adequacy of a search, even when a "slim yield may be intuitively unlikely" and a "reasonable observer would find th[e] result[s] unexpected." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011).  Moreover, "mere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *see also Sheffield v. Holder*, 951 F. Supp. 2d 98, 101 (D.D.C. 2013) (noting that a requester "cannot rest . . . on mere conjecture or purely speculative claims about the existence and discoverability of other documents") (internal citation omitted).

"In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Steinberg*, 23 F.3d at 551 (quoting *Weisberg*, 745 F.2d at 1485).  Affidavits or declarations are sufficient if they "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006)). This standard does not require that "the affidavits of the responding agency set forth with

meticulous documentation the details of an epic search for the requested records." *Perry v. Block*,

684 F.2d 121, 127 (D.C. Cir. 1982). "Rather, in the absence of countervailing evidence or apparent

inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the

search conducted by the agency will suffice . . . ." *Id.* Moreover, "[s]uch agency affidavits

attesting to a reasonable search 'are afforded a presumption of good faith, and can be rebutted only

with evidence that the agency's search was not made in good faith.'" *Riccardi v. U.S. Dep't of

Justice*, 32 F. Supp. 3d 59, 63 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Dep't of Interior*,

314 F. Supp. 2d 1, 8 (D.D.C. 2004)).

### B.    CBP Conducted Adequate Searches for Responsive Records

CBP's search meets the standard the FOIA requires. As set forth in Mr. Howard's

declaration, CBP satisfied its obligations under the FOIA because it made a good faith effort to

search for the requested records, using search methods that were reasonably expected to produce

the information requested, and CBP searched all locations likely to contain responsive records.

CBP's FOIA Division processes all FOIA requests received by the agency. Howard Decl.

¶ 29. The FOIA Division first determines which CBP offices are likely to possess responsive

information, and then works with those offices to gather responsive records. *Id.* ¶ 30. This initial

determination is based on the FOIA Division's review of the content of the FOIA request and the

nature of the records sought, its familiarity with the types and location of records that each office

maintains, and its discussions with knowledgeable agency personnel. *Id.*

In accordance with its search methods, the FOIA Division determined that the Trusted

Traveler Programs Office ("TTP Office") and the Office of the Trusted Traveler Ombudsman

("OMB Office") were the "only reasonable and likely sources for responsive records." *Id.*

Because Plaintiff's request sought records pertaining to the functioning of CBP's Global Entry

6

program, the FOIA Division identified the TTP Office as a likely source for responsive records, as this office is responsible for the operation of all Trusted Traveler Programs, of which Global Entry is one.  *Id.* ¶¶ 14, 16.  The FOIA Division identified the OMB Office as a likely source for responsive records in light of the fact that it maintains information on Trusted Traveler membership revocations that have been contested, which Plaintiff's request also sought.  *Id.* ¶¶ 20-22.  Moreover, Plaintiff's request specifically named the OMB Office.  *Id.*, Ex. C.  Accordingly, the FOIA Division worked with the TTP Office and the OMB Office to conduct searches for records responsive to Plaintiff's request.  *Id.* ¶ 30.

In response to Plaintiff's request for records regarding Global Entry membership "revocations, suspensions, or terminations," the TTP Office searched its Global Enrollment System ("GES"), which maintains, *inter alia*, information on why an individual's membership in a Trusted Traveler Program was revoked.[1]  *Id.* ¶¶ 18, 31.  For Part 1 of Plaintiff's request, which sought Global Entry revocation records since November 9, 2016, the TTP Office searched the GES for all records of individual Global Entry revocations from November 6, 2016 to June 6, 2017, the date the records were pulled from the system.  *Id.* ¶ 32.  The responsive information was then exported from the GES, partially redacted, and produced to Plaintiff.  *Id.* ¶¶ 32, 36 & Ex. F.  In response to Part 2 of Plaintiff's request, which sought the annual total number of Global Entry revocations between January 1, 2012 and November 8, 2016, the TTP Office searched the GES for Global Entry revocations from Fiscal Year 2012 (October 1, 2011) to Fiscal Year 2017 (through November 8, 2016).  *Id.* ¶ 33.  The responsive information was then exported from the GES and produced to Plaintiff.  *Id.* ¶¶ 33, 36 & Ex. F.

---

[1] As Mr. Howard explains in his declaration, the TTP Office does not use the terms "suspend" or "terminate," only "revoke."  Howard Decl. ¶ 31.

Part 3 of Plaintiff's request involved the Trusted Traveler OMB Office, seeking records on the "reversal or confirmation of" Global Entry revocation decisions. *Id.*, Ex. C. Unlike other parts of the request, Plaintiff's request for OMB records does not include a specific timeframe. *See id.* Based on the other timeframes provided in the request, the OMB Office searched for records of its reversals and confirmations of Global Entry revocation decisions from November 9, 2016 to June 6, 2017, which corresponds with Part 1 of Plaintiff's request. *Id.* ¶ 34. The responsive information was produced to Plaintiff, partially redacted. *Id.* ¶¶ 34, 36 & Exs. F, J.

For Part 6 of Plaintiff's request, which sought records created on or after November 9, 2016 relating to the operation of the Global Entry program that include specific key words and phrases identified by Plaintiff, the TTP Office searched the GES from November 6, 2016 to June 6, 2017 (the date of the search) for the exact words and phrases Plaintiff's request specified. *Id.* ¶ 37. This search yielded no responsive records. *Id.* In addition to the TTP Office's keyword search in the GES, CBP's Office of Information Technology ("OIT") ran an email search of 19 CBP custodians (including emails in which they were Cced or Bcced). *Id.* ¶¶ 38-39. These custodians included the 14 total employees who worked in or for the TTP Office from November 2016 to August 2017, including the Director of TTP, as well as five individuals in CBP senior leadership, or "front office," positions: the Acting Commissioner, his Chief of Staff, the Acting Deputy Commissioner, the former Acting Deputy Commissioner, and the Executive Assistant Commissioner of the Office of Field Operations. *Id.* ¶ 38. For this search, OIT applied the exact words and phrases identified in Part 6 of Plaintiff's request, from the time period November 9, 2016 to August 17, 2017 (the date of the search). *Id.* ¶¶ 39-40. Like the keyword search in the GES, this search yielded no records responsive to Part 6 of Plaintiff's request. *Id.* ¶ 40. However, during the course of reviewing the records generated from this search, CBP identified email

8

communications that were responsive to Parts 4 and 5 of Plaintiff's request, which sought records, created on or after November 9, 2016, of agency policies or practices with respect to Global Entry revocations and membership eligibility.  *Id.* ¶ 41.  CBP accordingly produced these records to Plaintiff, with appropriate redactions.  *Id.* ¶ 41 & Ex. G.

Based on the results of the searches thus far and on its conversations with the TTP Office, the FOIA Division determined that if there were any additional records responsive to Parts 4 and 5 of Plaintiff's request, "those records could be identified by pulling the emails of the Director of TTP during the relevant timeframe."  *Id.* ¶ 42.  That is because, as Mr. Howard explains, "[t]he Director of TTP would, at a minimum, be copied on any email involving a decision made by CBP leadership involving a change of policy in the operation of the Global Entry program and any guidance implementing such a change in policy."  *Id.* ¶ 43.  Moreover, any change in the operation of the Global Entry program, post-November 8, 2016, "would have been reflected in an email communication or in an attachment to an email."  *Id.*

The FOIA Division determined the relevant timeframe to be January 27, 2017 to February 4, 2017, since the only change in the operation of the Global Entry program, post-November 8, 2016, was as a result of Executive Order 13,769, titled "Protecting the Nation from Foreign Terrorist Entry into the United States."[2]  *Id.* ¶¶ 23-28, 44.  Accordingly, OIT pulled all emails sent or received by the Director of TTP from January 27, 2017 to February 4, 2017, including emails in which the Director was "Cced" or "Bcced."  *Id.* ¶ 44.  Those emails, including any attachments, were manually reviewed for responsiveness—that is, no search terms were applied to narrow the

---

[2] Executive Order 13,769 was issued on January 27, 2017 and enjoined on February 3, 2017.  *See Washington v. Trump*, No. C17-0141JLR, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017).

review.  *Id.* ¶ 45.  CBP released to Plaintiff all documents deemed responsive, with appropriate

redactions.  *Id.* ¶¶ 45-47 & Exs. H, I.

As the foregoing makes clear, CBP conducted searches that "were reasonably calculated

to uncover all potentially responsive records" and "all files likely to contain relevant documents

were searched."  *Id.* ¶ 49.  CBP has provided "[a] reasonably detailed [declaration], setting forth

the search terms and the type of search performed, and aver[ed] that all files likely to contain

responsive materials (if such records exist) were searched."  *Valencia-Lucena v. U.S. Coast Guard*,

180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C.

Cir. 1990)).  And that declaration sets forth in detail CBP's "good faith effort to conduct a search

for the requested records, using methods which can be reasonably expected to produce the

information requested."  *Oglesby*, 920 F.2d at 68.  As such, there can be little doubt—and no

dispute of material fact—that CBP conducted a search consistent with its obligations under the

FOIA.  The Court should therefore grant summary judgment in favor of Defendant on this issue.

## II.     CBP Properly Withheld Records Under Applicable FOIA Exemptions

The FOIA mandates disclosure of the requested records unless information falls within one

of the statute's nine exemptions.  5 U.S.C. § 552(b).  The district court has jurisdiction only to

compel the production of agency documents that are "improperly withheld."  *GTE Sylvania, Inc.*

*v. Consumers Union of the U.S. Inc.*, 445 U.S. 375, 387 (1980); *see also* 5 U.S.C. § 552(a)(4)(B);

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5

U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has

(1) 'improperly'; (2) 'withheld'; (3) 'agency records.'").  Although narrowly construed, FOIA's

exemptions "are intended to have meaningful reach and application."  *John Doe Agency v. John*

*Doe Corp.*, 493 U.S. 146, 152 (1989); *accord DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir.

2015).  Here, CBP properly withheld information pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

**A.      CBP Properly Withheld Privileged Information Under Exemption 5**

CBP properly withheld privileged materials exempt from disclosure under Exemption 5 of the FOIA.  Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 thus protects records and information that are "normally privileged in the civil discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  To fall within the protections of Exemption 5, then, "a document must . . . satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  Exemption 5 "allows the government to withhold records from FOIA disclosure under at least three privileges: the deliberative-process privilege, the attorney-client privilege, and the attorney work-product privilege."  *Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice Exec. Office for U.S. Att'ys*, 844 F.3d 246, 249 (D.C. Cir. 2016).  Here, CBP applied Exemption 5 to intra-agency email communications under the deliberative-process privilege.

"The deliberative-process privilege aims "to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government."  *Klamath Water*, 532 U.S. at 9 (citations omitted).  This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."  *Id.* at 8-9; *see also Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 917 F.2d 571, 573-74 (D.C. Cir. 1990).  Thus, the interest protected by Exemption 5 is

"'encourag[ing] the frank discussion of legal and policy issues' by ensuring that agencies are not 'forced to operate in a fishbowl.'" *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting *Wolfe v. U.S. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)).

To fall within the deliberative-process privilege, information in a record must be both "predecisional and deliberative." *Mapother*, 3 F.3d at 1537. A document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." *Petro. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citation omitted). "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. U.S. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1123 (D.C. Cir. 1989)). A document is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The deliberative-process privilege applies broadly to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* When evaluating deliberative-process claims, courts "must give considerable deference to the agency's explanation of its decisional process, due to the agency's expertise in determining what confidentiality is needed to prevent injury to the quality of agency decisions, while the decisionmaking process is in progress." *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (citation omitted).

In this case, CBP properly withheld predecisional and deliberative information from seven pages of email records released to Plaintiff. Specifically, CBP withheld draft language on the

impact of Executive Order 13,769 on Trusted Traveler Programs.  Howard Decl. ¶ 52 & Ex. K.

"[D]rafts are commonly found exempt under the deliberative process exemption." *People for the*

*Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007).  Five of these pages

contain draft guidance for the public.  Howard Decl. ¶ 52 & Ex. K.  This Court has found that

"ongoing decisionmaking about 'how the agency's activities should be described to the general

public,' . . . appropriately fall[s] under the protection of Exemption 5." *Competitive Enter. Inst. v.*

*U.S. Envt'l Prot. Agency*, 12 F. Supp. 3d 100, 118 (D.D.C. 2014) (quoting *Nat'l Sec. Archive v.*

*FBI*, No. 88-1507, 1993 WL 128499, at *2 (D.D.C. Apr. 15, 1993)).

        CBP determined that disclosing the redacted information would harm the interests

protected by Exemption 5 in general and the deliberative-process privilege in particular.  As Mr.

Howard explains in his declaration, the agency invoked the privilege to protect these pre-decisional

and deliberative materials because their disclosure "could reasonably be expected to have a chilling

effect on the open and frank expression of ideas, recommendations, and opinions that occurs when

agency officials are discussing and crafting guidance on a time-sensitive issue."  Howard Decl.

¶ 53.  Thus, the redacted information was properly withheld because public dissemination of this

information would cause agency officials to "temper candor with a concern for appearances . . . to

the detriment of the decision making process." *Sears, Roebuck & Co.*, 421 U.S. at 150-51 (quoting

*United States v. Nixon*, 418 U.S. 683, 705 (1974)).  As discussed, the deliberative-process privilege

protects agencies from "operat[ing] in a fishbowl," and preserves "the frank exchange of ideas and

opinions" that is necessary for effective decision-making. *Nat'l Sec. Archive v. CIA*, 752 F.3d 460,

462 (D.C. Cir. 2014) (quoting *Dudman Commc'ns Corp. v. U.S. Dep't of Air Force*, 815 F.2d

1565, 1567 (D.C. Cir. 1987)).  And here, disclosure of the challenged redactions would cause

13

foreseeable harm by impairing the government decision-making that the deliberative-process privilege is meant to protect. The Exemption 5 withholdings were appropriate.

> **B.      CBP Properly Withheld Personal Information Under Exemptions 6 and 7(C)**

CBP properly withheld personal information exempt from disclosure under Exemptions 6 and 7(C) of the FOIA. Exemption 6 provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Its more expansive law-enforcement counterpart, Exemption 7(C), permits withholding of "records or information compiled for law enforcement purposes" to the extent that "production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). "If a court determines that information was properly withheld under one exemption, it need not determine whether another exemption applies to that same information." *Marshall v. FBI*, 802 F. Supp. 2d 125, 134 (D.D.C. 2011) (citing *Simon v. U.S. Dep't of Justice*, 980 F.2d 782, 784-85 (D.C. Cir. 1992)).

The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6. In *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989), the Court rejected a "cramped notion of personal privacy" and instead emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." More specifically, the Court noted that "[p]rivacy is the claim of individuals . . . to determine for themselves when, how, and to what extent information about them is communicated to others." *Id.* at 764 n.16 (citation omitted). Privacy is of particular importance in the FOIA context because a disclosure required by FOIA is a disclosure to the public at large. *See Painting*

*& Drywall Work Pres. Fund, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 936 F.2d 1300, 1302 (D.C. Cir. 1991).

Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure. *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). The agency must determine whether disclosure threatens a protectable privacy interest; if so, the agency must weigh it against the public interest in disclosure, if any. *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (citation and alteration omitted). Plaintiff bears the burden of demonstrating that the release would serve this interest. *See Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391-92 nn. 8 & 13-14 (D.C. Cir. 1987).

By its language, "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material[s]." *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 7(C) protects the identities of "suspects, witnesses, [or] other persons of investigatory interest who are identified in agency records" compiled for law enforcement purposes, along with law enforcement personnel themselves. *Marshall*, 802 F. Supp. 2d at 134. "[L]aw enforcement personnel have a privacy interest in protecting their own identities because disclosure could subject them to annoyance, embarrassment, and harassment in the conduct of their official and private lives." *Id.* Like Exemption 6, Exemption 7(C) requires a balancing of the privacy interests of individuals mentioned in the records against the public interest in disclosure. *Concepcion v. U.S. Customs & Border Prot.*, 907 F. Supp. 2d 133, 141 (D.D.C. 2012),

15

*aff'd*, 550 F. App'x 1 (D.C. Cir. 2012).  However, the D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Servs.*, 926 F.2d at 1206.

Here, CBP properly withheld under both Exemption 6 and Exemption 7(C) personal information of Trusted Traveler members and certain CBP officials that was contained in GES records and agency email communications.  Specifically, CBP withheld personally identifiable information of Trusted Traveler members, such as their names, phone numbers, email addresses, dates of birth, and Trusted Traveler member identification number.  Howard Decl. ¶ 57; *see, e.g.*, *id.*, Ex. L.  As Mr. Howard explains, "releasing the identities of third parties merely mentioned in agency records, without their authorization, would violate their legitimate privacy interests," which "clearly outweigh[] the public interest, if any" in disclosure of such information.  *Id.* ¶ 58. Similarly, CBP withheld the names and work addresses, phone numbers, and email addresses of certain CBP officials.  *Id.* ¶ 57; *see, e.g.*, *id.*, Ex. L.  Disclosure of such information would "not meaningfully shed light on how the government performs its duties," but would rather "risk[] unwarranted attribution and attention to the employee beyond the confines of their job and into their personal life."  *Id.* ¶ 58.  CBP did not categorically redact this information, however.  The names of senior CBP officials whose identities are widely known amongst the public, such as those in leadership positions, were not withheld.  *Id.* ¶ 57.

Mr. Howard's declaration makes clear that CBP's withholding of personally identifiable information in the records released to Plaintiff was appropriate.  Case law in this Circuit fully supports this position, particularly due to the strong privacy interests inherent in law enforcement

records.  *See, e.g., Negley v. FBI*, 825 F. Supp. 2d 63, 72 (D.D.C. 2011) (protecting from disclosure

under 7(C) the names and/or identifying information of FBI personnel, individuals who provided

information to the FBI under an implied assurance of confidentiality, and third parties merely

mentioned in the records); *Marshall*, 802 F. Supp. 2d at 134-35 (protecting from disclosure under

7(C) names and identifying information of FBI personnel and third parties of investigative

interest); *Schoenman v. FBI*, 575 F. Supp. 2d 136, 159 (D.D.C. 2008) (citing *SafeCard* for the

proposition that names and addresses of private individuals can be categorically protected under

Exemption 7(C)).   Given the sensitivity of the information withheld and lack of public interest in

the disclosure of such information, CBP's Exemptions 6 and 7(C) withholdings were appropriate.

### C.    CBP Properly Withheld Law Enforcement-Sensitive Information Under Exemption 7(E)

CBP properly withheld law enforcement-sensitive information exempt from disclosure

under Exemption 7(E) of the FOIA.  Exemption 7(E) protects information "compiled for law

enforcement purposes" if release of the information "would disclose techniques and procedures

for law enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Congress intended that Exemption 7(E)

protect from disclosure techniques and procedures used to prevent and protect against crimes, as

well as techniques and procedures used to investigate crimes after they have been committed.  *See,*

*e.g.*, *PHE, Inc. v. U.S. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993).  "[T]he exemption

is written in broad and general terms" to avoid assisting lawbreakers.  *Mayer Brown LLP v. IRS*,

562 F.3d 1190, 1193 (D.C. Cir. 2009).

The terms of the statute provide that, to withhold records that would reveal law

enforcement "guidelines," an agency must show that "disclosure could reasonably be expected to

risk circumvention of the law."  It is unclear whether this requirement also applies to withholding

of records that would reveal "techniques and procedures."  *See Citizens for Responsibility & Ethics*

*in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1102 n.8 (D.C. Cir. 2014).  However, the D.C.

Circuit has stressed that the risk-of-circumvention requirement sets a "low bar."  *Blackwell v. FBI*,

646 F.3d 37, 42 (D.C. Cir. 2011).  Given the low threshold for meeting the risk-of-circumvention

requirement, and given that disclosure of law enforcement techniques and procedures usually has

obvious potential to create a risk of circumvention, it generally makes little practical difference

whether the risk-of-circumvention requirement applies to all of Exemption 7(E) or only the part

dealing with "guidelines."  *See Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundry*

*& Water Comm'n*, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014).  In any event, Defendant's withholdings

under Exemption 7(E) meet the requirement if it applies.

  In this case, CBP properly invoked Exemption 7(E) to protect from disclosure the

following types of information contained within records compiled for law enforcement purposes:

  <u>Comments on revocation records from the GES database</u> – CBP properly withheld under

Exemption 7(E) certain internal comments from Global Entry revocation records pulled from the

GES database as well as certain Ombudsman comments from the OMB Office revocation records.

Mr. Howard explains in his declaration that, in the GES database, there are fields for internal

comments which refer to "the specific reasons why TTP revoked an individual's Global Entry

membership," or, in the case of the OMB Office revocation records, "specific reasons why the

OMB Office reversed or sustained a TTP decision to revoke an individual's Global Entry

membership."  Howard Decl. ¶ 62i, ii.  Here, CBP released the comment if the Global Entry

revocation was related to E.O. 13,769, but withheld the comment if the revocation was for reasons

other than E.O. 13,769.  *Id.*  Disclosure of this information, Mr. Howard explains, "would permit

individuals to identify the types of information CBP maintains for assessing risk and permit individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, or effectuate other countermeasures," which would jeopardize "CBP's approach to risk assessment through ongoing techniques, operations, and investigations." *Id.* Specifically, disclosure of these comments "would allow individuals to have better insight into what information CBP has, and how that affects eligibility for Trusted Traveler membership, which could reasonably support their efforts to circumvent the law." *Id.*

Information regarding CBP's targeting process – CBP properly withheld under Exemption 7(E) information regarding CBP's process for assessing the risk of particular travelers seeking entry into the United States.  Release of this information would "advise potential violators of CBP's law enforcement techniques and procedures for assessing risk, thereby enabling them to circumvent the law, avoid detection, and evade apprehension." *Id.* ¶ 62iii. And revealing information regarding ongoing investigations "would thwart CBP's current law enforcement efforts and risk individuals circumventing CBP's future efforts." *Id.*

Internal system codes – CBP properly withheld under Exemption 7(E) internal system codes and information related to CBP system interfaces.  As Mr. Howard explains in his declaration, the agency withheld this information because "[d]isclosure of such information could be used to locate, access, and navigate internal law enforcement computer systems or databases and risk compromising the integrity of GES and other CBP systems." *Id.* ¶ 62iv.

Internal email addresses of group list serves – CBP properly withheld under Exemption 7(E) the internal email addresses of group list serves.  These email addresses, unlike those meant for the public such as for media inquiries, are only known amongst CBP officials and not meant to be used or known outside the agency. *Id.* ¶ 62v.  As Mr. Howard explains in his declaration,

disclosure of these internally-used email addresses would "reveal the means by which CBP communicates law enforcement information and could reasonably be expected to risk comprising the integrity of those email communications." *Id.*

As Mr. Howard's declaration makes clear, CBP's withholdings of these types of information under Exemption 7(E) were proper. As an initial matter, these records were all compiled for law enforcement purposes. A record is compiled for a law enforcement purpose where "the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws,' and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002) (quoting *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982)). Undoubtedly, CBP's records satisfy this requirement inasmuch as they are "collected and used by CBP in its mission to secure the borders and facilitate legitimate travel to the United States." Howard Decl. ¶ 61. *See also Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 19 (D.D.C. 2014) ("CBP is indisputably a law enforcement agency and is entitled to deference in its determination that the records were compiled for a law enforcement purpose.").

Further, courts have routinely held that law enforcement-sensitive information such as techniques and procedures used to assess eligibility for a law enforcement program, techniques used to assess risk to law enforcement operations such as border security, and system codes from law enforcement databases, are exempt from disclosure under Exemption 7(E). *See, e.g.*, *Barnard v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 22 (D.D.C. 2009) (protecting under 7(E) "examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers"); *Ahmed v. U.S. Citizen & Immigration Servs.*, No. 11-cv-6230, 2013 WL 27697, at *4 (E.D.N.Y. Jan. 12, 2013) (protecting under 7(E) "techniques and

procedures for vetting and for processing applications of subjects that may pose a national security concern"); *Strunk v. U.S. Dep't of State*, 905 F. Supp. 2d 142, 147-48 (D.D.C. 2012) (concluding that "computer screen transaction codes, computer program transaction codes, and computer function codes" used by CBP were exempt under 7(E) because their disclosure "could reasonably be expected to risk circumvention of the law"); *cf. Soghoian v. U.S. Dep't of Justice*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) ("Knowing what information is collected, how it is collected, and more importantly, when it is *not* collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection.").

In particular, one district court recently held that withholding certain comments on Global Entry revocation records was appropriate under Exemption 7(E). *See Paco v. U.S. Customs and Border Prot.*, No. 14-5017, 2016 WL 344522, at *6 (D.N.J. Jan. 27, 2016) (agreeing that "disclosure of the information used to render decisions regarding eligibility for the [Global Entry] program could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed in investigations where they may be targets") (internal citation omitted).

Moreover, "[l]aw enforcement agencies such as [CBP] should be accorded special deference in an Exemption 7 determination." *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1193 (9th Cir. 1983) (citing *Pratt*, 673 F.2d at 420-21). And CBP's role in promoting national security through legitimate travel to the United States warrants the Court's special deference in this context. *See Ctr. for Nat. Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("We have consistently reiterated the principle of deference to the executive in the FOIA context when national security concerns are implicated."). The Exemption 7(E) withholdings were appropriate.

### D.      CBP Released All Reasonably Segregable, Non-Exempt Materials

Consistent with its obligations under the FOIA, CBP released all reasonably segregable, non-exempt information to Plaintiff.  The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Although factual information generally must be disclosed, courts have made clear that agencies may withhold factual material if "the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  An agency has no obligation to segregate non-exempt material that is so intertwined with exempt material that "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981), *overruled on other grounds by Church of Scientology of Cal. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986) (en banc).

Here, CBP "reviewed each release of records line-by-line to confirm that any withholdings were proper, examined whether any discretionary waiver of an exemption was warranted, and determined whether any segregable, non-exempt information could further be released."  Howard Decl. ¶ 64.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  And a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).  The presumption that CBP

complied with its obligations should apply, and the Court should accordingly grant summary judgment to Defendant on this issue.

### III.   The Court Lacks Jurisdiction over Plaintiff's Expedited Processing Claim

Plaintiff's second claim, that CBP violated the FOIA by constructively denying its request for expedited processing, is moot.  Under the FOIA, courts "shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request."  5 U.S.C. § 552(a)(6)(E)(iv).  *See Muttitt v. U.S. Dep't of State*, 926 F. Supp. 2d 284, 296-97 (D.D.C. 2013) ("Once an agency has made its final determination under § 552(a)(6)(A), the *timeliness* of that determination is no longer a live controversy fit for judicial review." (citing *Atkins v. U.S. Dep't of Justice,* No. 90-5095, 1991 WL 185084, at *1 (D.C. Cir. Sept. 18, 1991) ("The question whether [the agency] complied with the [FOIA's] time limitations in responding to [the plaintiff's] request is moot because [the agency] has now responded to this request.")); *Citizens for Responsibility & Ethics in Wash. v. FEC,* 839 F. Supp. 2d 17, 24 (D.D.C. 2011) ("[T]o the extent that Plaintiff's Complaint challenged the timeliness of [the agency's] production, it is now moot."); *Landmark Legal Found. v. EPA,* 272 F. Supp. 2d 59, 68 (D.D.C. 2003) ("[A] lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester.")).  Because CBP has completed its processing of Plaintiff's request, Plaintiff's expedited processing claim is moot and the Court lacks subject matter jurisdiction over the "constructive denial" of its expedited processing request.  Accordingly, the Court should grant summary judgment to Defendant on this claim.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor.

Dated: February 19, 2018

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ Kari E. D'Ottavio
KARI E. D'OTTAVIO
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Tel.: (202) 305-0568
Fax: (202) 616-8470
kari.e.d'ottavio@usdoj.gov

*Counsel for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
AMERICAN-ARAB ANTI-                                    )
DISCRIMINATION COMMITTEE                       )
)
Plaintiff,                                     )
)
v.                                              )          Civil Action No. 1:17-cv-00708-CRC
)
U.S. CUSTOMS AND BORDER                          )
PROTECTION,                                           )
)
Defendant.                                )
_____)

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h)(1), Defendant U.S. Customs and Border Protection ("CBP") respectfully submits that the following material facts are not in genuine dispute:

1.      On March 8, 2017, Plaintiff American-Arab Anti-Discrimination Committee ("Plaintiff") submitted a Freedom of Information Act ("FOIA") request to CBP via the agency's online FOIA portal.  That request read as follows:

   1) All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request.

   2) All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and November 8, 2017.

   3) All agency records showing reversal or confirmation of CBP's GES revocation decisions by the CBP Ombudsman's office.

   4) Any agency policy, practice, memorandum, training, guidance, communication, or other similar record created on or after November 9, 2017 relating to the suspension, revocation, or termination of GES.

25

5)  Any agency policy, practice, memorandum, training, communication or other similar record created on or after November 9, 2017 that alters, modifies, or in any way affects CBP's prior practices and policies with respect to GES screening, investigation, or revocation.

6)  Any agency records created on or after November 9, 2017 relating to operation or functioning of the GES program containing any of the following the words or phrases, whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or "Travel Ban".

Declaration of Patrick Howard ("Howard Decl.") ¶¶ 3 n.1, 5 & Ex. A.

2.      The request sought expedited processing and a waiver of associated fees.  Howard Decl. Ex. A.

3.      CBP acknowledged receipt of Plaintiff's request and assigned it tracking number CBP-2017-037684.  Howard Decl. ¶ 3 n.1 & Ex. B.

4.      On March 9, 2017, Plaintiff submitted a corrected FOIA request to CBP via the agency's online FOIA portal to modify the date ranges specified in its March 8, 2017 request.  That request read as follows:

1)  All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request.

2)  All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and November 8, **2016**.

3)  All agency records showing reversal or confirmation of CBP's GES revocation decisions by the CBP Ombudsman's office.

4)  Any agency policy, practice, memorandum, training, guidance, communication, or other similar record created on or after November 9, **2016** relating to the suspension, revocation, or termination of GES.

5)  Any agency policy, practice, memorandum, training, communication or other similar record created on or after November 9, **2016** that alters, modifies, or in any way affects CBP's prior practices and policies with respect to GES screening, investigation, or revocation.

26

6)  Any agency records created on or after November 9, **2016** relating to operation or functioning of the GES program containing any of the following the words or phrases, whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or "Travel Ban".

Howard Decl. ¶¶ 5-6 & Ex. C (emphasis in original).

5.      The corrected request incorporates by reference all information contained in the March 8, 2017 request, and thus sought expedited processing and a waiver of associated fees. Howard Decl. ¶ 7 & Exs. A, C.

6.      CBP acknowledged receipt of Plaintiff's corrected request and assigned it tracking number CBP-2017-038185.  Howard Decl. ¶ 8 & Ex. D.

7.      On April 18, 2017, Plaintiff filed the instant lawsuit.  ECF No. 1 & Howard Decl. Ex. E.

8.      Patrick A. Howard is a Branch Chief in CBP's FOIA Division, in which capacity he oversees a staff of Government Information Specialists, the processing of requests for records submitted to CBP pursuant to the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.  Howard Decl. ¶ 1.

9.      The Howard Declaration explains the searches CBP conducted in responding to Plaintiff's FOIA request, CBP's withholdings of responsive information pursuant to FOIA exemptions, and the segregablity of documents partially withheld or withheld in full.  Howard Decl. ¶ 4.

10.     CBP's FOIA Division's reviewed Plaintiff's FOIA request and determined based on the content of the request itself and the nature of the records sought, as well as the FOIA Division's familiarity with the types and location of records that each office maintains, and discussions with knowledgeable agency personnel, that the only reasonable and likely sources for

27

responsive records were CBP's Trusted Traveler Programs Office ("TTP Office") and the Office of the CBP Trusted Traveler Ombudsman ("OMB Office").  Howard Decl. ¶ 30.

11.     The TTP Office is the entity within CBP responsible for the operation of Trusted Traveler Programs, of which Global Entry is one.  Howard Decl. ¶¶ 14, 16.

12.     The TTP Office utilizes a single database, known as the Global Enrollment System ("GES"), to maintain information on applicants for admission to Trusted Traveler Programs and on Trusted Traveler members.  This includes information on why a particular applicant was denied membership in a Trusted Traveler Program and information on why an individual's membership in a Trusted Traveler Program was revoked.  Howard Decl. ¶ 18.

13.     The OMB Office is an independent office within CBP not associated with the TTP Office that may reconsider a contested decision by the TTP Office to deny a Trusted Traveler Program application or revoke a Trusted Traveler Program membership.  Howard Decl. ¶¶ 20-21.

14.     CBP's FOIA Division worked with the TTP Office and the OMB Office to search for records responsive to Plaintiff's request.  Howard Decl. ¶ 30.

15.     In response to Part 1 of Plaintiff's request, the TTP Office searched the GES for records of individual Global Entry revocations from November 6, 2016 to June 6, 2017.  Howard Decl. ¶ 32.

16.     In response to Part 2 of Plaintiff's request, the TTP Office searched the GES for the total number of Global Entry revocations from FY 2012 (October 1, 2011) to FY 2017 (through November 8, 2016).  Howard Decl. ¶ 33.

17.     In response to Part 3 of Plaintiff's request, the OMB Office searched the GES for records where the OMB Office sustained or reversed the TTP Office's decision to revoke a Global Entry membership from November 9, 2016 to June 6, 2017.  Howard Decl. ¶ 34.

28

18.     The parties agreed that CBP would provide to Plaintiff information on the data fields associated with a Global Entry membership application and a raw data run of a GES records. Howard Decl. ¶ 35.

19.     In response to Parts 4 and 5 of Plaintiff's request, CBP's Office of Information Technology ("OIT") pulled all emails sent or received by the Director of TTP, including emails in which the Director was Cced or Bcced, from January 27, 2017 to February 4, 2017.  Howard Decl. ¶ 44.  CBP reviewed these emails for responsiveness.  Howard Decl. ¶¶ 44-45.

20.     In response to Part 6 of Plaintiff's request, the TTP Office searched the GES from November 6, 2016 to June 6, 2017 for the following words or phrases: "Muslim," "Arab," "Ban," "Muslim Ban," or "Travel Ban."  This search did not identify any responsive records.  Howard Decl. ¶ 37.

21.     In response to Part 6 of Plaintiff's request, OIT ran a search of (1) the emails of 14 CBP employees who were either assigned to the TTP Office or had responsibilities in the TTP Office from November 2016 to August 2017, including the Director of TTP, and (2) the emails of Acting Commissioner Kevin K. McAleenan, his Chief of Staff Patrick Flanagan, Acting Deputy Commissioner Ronald Vitiello, Former Acting Deputy Commissioner Randolph Alles, and Executive Assistant Commissioner of the Office of Field Operation Todd C. Owen.  Howard Decl. ¶ 38.  OIT pulled all emails sent or received by these 19 CBP custodians, including emails in which they were Cced or Bcced, from the time period November 9, 2016 to August 17, 2017, for the following words or phrases: "Muslim," "Arab," "Ban," "Muslim Ban," or "Travel Ban."  Howard Decl. ¶ 39.  CBP reviewed the search results for responsiveness and no records responsive to Part 6 of Plaintiff's request were identified.  Howard Decl. ¶ 40.  However, records responsive to Parts 4 and 5 of Plaintiff's request were identified.  Howard Decl. ¶ 41.

22.     On August 11, 2017, CBP produced to Plaintiff 189 pages of nonexempt records, or nonexempt portions of records, responsive to Plaintiff's FOIA request.  Howard Decl. ¶ 36 & Ex. F.

23.     On October 6, 2017, CBP produced to Plaintiff 47 pages of nonexempt records, or nonexempt portions of records, responsive to Plaintiff's FOIA request.  Howard Decl. ¶ 41 & Ex. G.

24.     On December 14, 2017, CBP produced to Plaintiff 258 pages of nonexempt records, or nonexempt portions of records, responsive to Plaintiff's FOIA request.  Howard Decl. ¶ 45 & Ex. H.

25.     On January 5, 2018, CBP produced to Plaintiff nine pages of nonexempt records, or nonexempt portions of records, and 25 Microsoft Excel spreadsheets responsive to Plaintiff's FOIA request.  Howard Decl. ¶ 47 & Ex. I.

26.     On February 15, 2018, CBP re-released 61 pages of records with updated redactions, and one additional Microsoft Excel spreadsheet responsive to Plaintiff's FOIA request. Howard Decl. ¶ 48 & Ex. J.

27.     CBP applied FOIA Exemptions 5, 6, 7(C), and 7(E) to the records produced to Plaintiff.  Howard Decl. ¶ 50.

28.     CBP withheld under Exemption 5 pre-decisional and deliberative materials contained in email communications among CBP officials concerning the impact of Executive Order 13,769 on Trusted Traveler Programs, the release of which could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when agency officials are discussing and crafting guidance on a time-sensitive issue. Howard Decl. ¶¶ 52-53.

29.     CBP withheld under Exemption 6 and Exemption 7(C) personally identifiable information of Trusted Traveler members contained in CBP's GES database and in agency email communications, the disclosure of which would constitute an invasion of personal privacy that outweighs the public interest in disclosure.  Howard Decl. ¶¶ 57-58.

30.     CBP withheld under Exemption 6 and Exemption 7(C) personally identifiable information of CBP employees (whose identities are not widely known among the public) contained in agency email communications, the disclosure of which would constitute an invasion of personal privacy that outweighs the public interest in disclosure.  Howard Decl. ¶¶ 57-58.

31.     CBP withheld under Exemption 7(E) records compiled for law enforcement purposes relating to the operation of CBP's Global Entry program.  Such information included internal comments on Global Entry revocation records that explain the reasons for the revocation, and Ombudsman comments on Global Entry revocation records that explain the reasons why the Ombudsman reversed or sustained a TTP Office revocation decision. Disclosure of this information would permit individuals to identify the types of information CBP maintains for assessing risk and allow individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures that could corrupt the integrity of CBP's approach to risk assessment through ongoing techniques, operations, and investigations.  Howard Decl. ¶ 62i, ii.

32.     CBP withheld under Exemption 7(E) information relating to CBP's process for assessing risk on travelers seeking to enter the United States, the disclosure of which would advise potential violators of CBP's law enforcement techniques and procedures for assessing risk, thereby enabling them to circumvent the law, avoid detection, and evade apprehension, and would thwart

CBP's current law enforcement efforts and risk individuals circumventing CBP's future efforts. Howard Decl. ¶ 62iii.

33.     CBP withheld under Exemption 7(E) internal system codes and information related to CBP system interfaces, the disclosure of which could be used to locate, access, and navigate internal law enforcement computer systems or databases and risk compromising the integrity of the GES and other CBP systems. Howard Decl. ¶ 62iv.

34.     CBP withheld under Exemption 7(E) internal agency email addresses of group list serves that are not known to the public and only used within the agency, disclosure of which would reveal the means by which CBP communicates law enforcement information and could reasonably be expected to risk compromising the integrity of those email communications.  Howard Decl. ¶ 62v.

35.     All of the documents described in Mr. Howard's declaration were reviewed line-by-line to identify information exempt from disclosure and every effort was made to segregate releasable material from exempt material.  Howard Decl. ¶ 64.


Dated: February 19, 2018                    Respectfully submitted,

                                            CHAD A. READLER
                                            Acting Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Branch Director

                                            /s/ Kari E. D'Ottavio
                                            KARI E. D'OTTAVIO
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue, NW
                                            Washington, D.C. 20530
                                            Tel.: (202) 305-0568
                                            Fax: (202) 616-8470

kari.e.d'ottavio@usdoj.gov

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2018, a true and correct copy of the foregoing was filed electronically via the Court's ECF system, which sent notification of such filing to counsel of record for all parties.


/s/ Kari E. D'Ottavio      
Kari E. D'Ottavio
