**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
AMERICAN-ARAB ANTI-                 )
DISCRIMINATION COMMITTEE     )
                                                    )
              Plaintiff,                          )
                                                    )
       v.                                           )          Civil Action No. 1:17-cv-00708-CRC
                                                    )
U.S. CUSTOMS AND BORDER        )
PROTECTION,                               )
                                                    )
              Defendant.                         )
_____)

## DECLARATION OF PATRICK HOWARD

I, Patrick A. Howard, declare the following to be true and correct:

1.       I am a Branch Chief in the Freedom of Information Act (FOIA) Division at

U.S. Customs and Border Protection (CBP).  I have been a Branch Chief in the FOIA Division in

Washington, D.C. since February 8, 2015.  In this capacity, I oversee a staff of Government

Information Specialists, the processing of requests for records submitted to CBP pursuant to the

FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted

pursuant to applicable records access provisions.

2.       I am familiar with CBP's procedures for responding to FOIA requests.  I provide

technical and administrative supervision and direction to a group of FOIA specialists in

processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally

familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for

adequacy and compliance with federal laws and regulations.

3.      I am familiar with the March 9, 2017 corrected FOIA request[1] submitted to CBP by American-Arab Anti-Discrimination Committee (hereinafter "Plaintiff").  *See* Exhibit C.  The statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and through agency files that I personally reviewed in the course of my official duties.

4.      The purpose of this Declaration is to describe CBP's handling of Plaintiff's FOIA request.  This Declaration summarizes the relevant facts and correspondence regarding Plaintiff's FOIA request, explains the searches CBP conducted in responding to the request, details CBP's withholdings of responsive information pursuant to FOIA exemptions, in accordance with the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and addresses the segregability of documents partially withheld or withheld in full.

## I.    Plaintiff's FOIA Request

5.      On March 8, 2017, Plaintiff filed a FOIA request using CBP's online FOIA portal.  *See* Exhibit A.  On March 9, 2017, Plaintiff filed a corrected FOIA request modifying the dates for which records were requested.  *See* Exhibit C.

6.      Plaintiff's FOIA request sought disclosure of records pertaining to the operation of CBP's Global Entry program.  In particular, Plaintiff set out the following six categories of requested information:

> 1)  All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request.

---

[1] Plaintiff submitted its original FOIA request on March 8, 2017, *see* Exhibit A, which the agency assigned tracking number CBP-2017-037684, *see* Exhibit B.  On March 9, 2017, Plaintiff submitted a corrected FOIA request that modified the dates for which the records were requested.  *See* Exhibit C.  This corrected request was assigned tracking number CBP-2017-038185.  *See* Exhibit D.

2

2) All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and November 8, 2016.

3) All agency records showing reversal or confirmation of CBP's GES revocation decisions by the CBP Ombudsman's office.

4) Any agency policy, practice, memorandum, training, guidance, communication, or other similar record created on or after November 9, 2016 relating to the suspension, revocation, or termination of GES.

5) Any agency policy, practice, memorandum, training, communication or other similar record created on or after November 9, 2016 that alters, modifies, or in any way affects CBP's prior practices and policies with respect to GES screening, investigation, or revocation.

6) Any agency records created on or after November 9, 2016 relating to operation or functioning of the GES program containing any of the following the words or phrases, whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or "Travel Ban".

7.     Plaintiff's FOIA request sought expedited processing and a waiver of associated fees.  *See* Exhibits A, C.

8.     On March 9, 2017, CBP acknowledged receipt of Plaintiff's FOIA request and assigned it tracking number CBP-2017-038185.  *See* Exhibit D.

9.     On April 18, 2017, Plaintiff filed the instant lawsuit.  *See* Exhibit E.

10.     In response to Plaintiff's FOIA request, CBP released to Plaintiff 503 pages of non-exempt records, or non-exempt portions of records, and 26 spreadsheets[2] in Microsoft Excel format.  CBP did not charge fees to Plaintiff for this response.

**II.     CBP's Trusted Traveler Programs and CBP Trusted Traveler Ombudsman**

11.     CBP is a component law enforcement agency of the U.S. Department of Homeland Security (DHS) with statutory responsibility for safeguarding America's borders and

---

[2] Each spreadsheet contains hundreds of lines of information and if printed in a pdf file format would have collectively amounted to hundreds of pages of information.

facilitating legitimate trade and travel.  CBP is comprised of over 60,000 employees charged

with enforcing over 400 federal statutes on behalf of over 40 different federal agencies.  CBP's

mission is to protect the borders of the United States against terrorists and instruments of terror,

enforce the customs and immigration laws of the United States, and foster our Nation's economy

by facilitating lawful international trade and travel.  This mission includes the detection and

prevention of unlawful entry into the United States.  The creation and implementation of

effective law enforcement policies and procedures is paramount to achieving this mission.  The

records at issue in this case are directly related to CBP's law enforcement activities and are used

for border security and enforcement purposes.

12.     The Office of Field Operations (OFO) within CBP is responsible for enforcing

numerous federal statutes and regulations, including those related to customs, immigration,

agriculture, public health and safety, at our nation's 328 ports of entry and 15 preclearance

locations.  OFO is comprised of nearly 30,000 employees.

13.     The Admissibility and Passenger Programs Office (APP), located at CBP

Headquarters in Washington D.C., is the office within OFO responsible for programmatic

oversight of OFO's operations in relation to travelers seeking entry to the United States.  It

oversees several smaller officers, one of which is the Trusted Traveler Programs Office.

14.     The Trusted Traveler Programs Office (TTP) is the entity within

DHS/CBP/OFO/APP responsible for operation of Trusted Traveler Programs, including

determining membership eligibility, approving and denying membership applications, and

revoking existing memberships.

15.     A Trusted Traveler Program is a membership program operated by CBP that, for a fee, provides pre-approved, low-risk travelers with expedited processing into the United States through dedicated lanes and kiosks.

16.     Global Entry is one type of Trusted Traveler Program.  The operation of the program is governed by federal regulation, 8 C.F.R. § 235.12.  The program is open to eligible U.S. citizens, U.S. nationals, U.S. lawful permanent residents (LPRs), and certain nonimmigrant aliens from countries that have reciprocal arrangements with CBP.  *See id.* § 235.12(b).

17.     Between November 2016 and August 2017, a total of 14 OFO employees were either assigned to TTP or had responsibilities involving TTP.

18.     TTP utilizes a single database, known as the Global Enrollment System (GES),[3] to maintain information on applicants for admission to Trusted Traveler Programs and on Trusted Traveler members.  This information includes, among other things, information on why a particular applicant was denied membership in a Trusted Traveler Program and information on why an individual's membership in a Trusted Traveler Program was subsequently revoked.

19.     An individual whose application for membership in Global Entry is denied or an individual whose Global Entry membership is revoked has three possible methods of redress as described in 8 C.F.R. § 235.12(k).

20.     One of the three options is to contest the denial or revocation by writing to the CBP Trusted Traveler Ombudsman (OMB), submitting additional information if applicable, and requesting reconsideration.

---

[3] Plaintiff's FOIA request uses the acronym "GES" for "Global Entry System," not to be confused with TTP's use of "GES" for its "Global Enrollment System," which is the database used for all Trusted Traveler Programs.

21.     The OMB Office is an independent office within OFO, not within APP and not associated with TTP, that may reconsider TTP's decision to deny a Trusted Traveler Program application or revoke a Trusted Traveler Program membership.

22.     If OMB reconsiders a TTP decision, it will either sustain or reverse the decision, and maintain a record of the decision, and the rationale behind that decision, in GES.

### III.  CBP's Trusted Traveler Programs, the Executive Orders, and the Presidential Proclamation

23.     On January 27, 2017, President Trump issued Executive Order 13,769 (EO 1), titled "Protecting the Nation from Foreign Terrorist Entry into the United States."

24.     On January 30, 2017, TTP began identifying and revoking Trusted Traveler members, including Global Entry members who were lawful permanent residents of the United States and citizens of one of the seven countries identified in EO 1.

25.     On February 1, 2017, clarifying guidance was issued from the White House that EO 1 did not apply to LPRs.

26.     By February 2, 2017, TTP reinstated all Global Entry members whose memberships were revoked as a result of EO 1.

27.     Between November 9, 2016 and June 6, 2017 (the date records of Global Entry membership revocations were pulled from GES for this request), the only (temporary) change to the operation of Global Entry in terms of membership eligibility was as a result of EO 1.

28.     On March 6, 2017 and September 24, 2017, respectively, President Trump issued Executive Order 13,780 (EO 2) and the Presidential Proclamation Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats.  However, there were no changes to Trusted Traveler Programs as a result of EO 2 or the Presidential Proclamation.

## IV.  CBP's Search for Responsive Records

29.     CBP's FOIA Division is responsible for handling all FOIA requests received by the agency.  Broadly, the FOIA Division reviews FOIA requests, determines whether responsive records exist, and, if so, whether they can be released in accordance with the FOIA.  In processing such requests, the FOIA Division consults with CBP personnel and, when appropriate, with other components in DHS as well as other Executive Branch agencies.

30.     The FOIA Division first determines which CBP offices are likely to possess responsive information, and then works with those offices to gather any responsive records.  Assessments of where responsive records are likely to be maintained are based on a review of the content of the request itself and the nature of the records sought, as well as the FOIA Division's familiarity with the types and location of records that each office maintains, and discussions with knowledgeable agency personnel.  Here, the FOIA Division concluded that the only reasonable and likely sources for responsive records were CBP's Trusted Traveler Program Office (TTP) and the Office of the CBP Trusted Traveler Ombudsman (OMB), in light of their duties and function as described above.  Thus, TTP and OMB were directed to search for records responsive to Plaintiff's request.

31.     Parts 1 and 2 of Plaintiff's FOIA request asks for records related to Global Entry "revocations, suspensions, or terminations."  TTP does not "suspend" Trusted Traveler memberships.  They are either revoked or terminated, although TTP uses the term "revoked."  A Global Entry membership that is revoked can be subsequently reinstated.  Accordingly, in response to Parts 1 and 2 of Plaintiff's FOIA request, TTP searched for records related to Global Entry revocations.

32.     In response to Part 1 of Plaintiff's FOIA request, TTP searched GES for all records of individual Global Entry revocations from November 6, 2016 until June 6, 2017, the date the records were pulled from the system.  The responsive information was exported from GES into a Microsoft Excel spreadsheet.

33.     In response to Part 2 of Plaintiff's FOIA request, TTP searched GES for the total number of Global Entry revocations from FY 2012 (October 1, 2011) to FY 2017 (through November 8, 2016).  The responsive information was exported from GES into a Microsoft Excel spreadsheet.

34.     The OMB Office searched for records responsive to Part 3 of Plaintiff's FOIA request.  Plaintiff did not indicate a timeframe associated with this particular request.  However, the OMB Office searched GES for records where the OMB sustained or reversed TTP's decision to revoke Global Entry memberships from November 9, 2016 until June 6, 2017 (which corresponds with the dates records were pulled in response to Part 1 of Plaintiff's FOIA Request).  The responsive information was exported from GES into two separate Microsoft Excel spreadsheets.

35.     Upon conferring with Plaintiff about the scope of its release in response to Parts 1 – 3 of Plaintiff's FOIA request, CBP agreed to provide additional information to Plaintiff not specifically included in the request.  This included information on the data fields associated with a Global Entry membership application and a raw data run of a GES record to give Plaintiff an understanding of what the raw data looks like.

36.     On August 11, 2017, CBP released records responsive to Parts 1 – 3 of Plaintiff's FOIA request, including the additional information described in paragraph 37, in Bates numbers

EOFOIACBP0000000057, and EOFOIACBP0000000242-429.[4]  *See* Exhibit F.  On February 15, 2018, CBP released one additional record responsive to Part 3 of Plaintiff's request, in Bates number EOFOIACBP0000001508.  *See* Exhibit J.

37.     In response to Part 6 of Plaintiff's FOIA request, TTP conducted a search of GES for the time period from November 6, 2016 until June 6, 2017 for the keywords identified in Part 6 of Plaintiff's FOIA Request.  The keyword search did not identify any responsive records.

38.     In addition to TTP searching GES for the keywords identified in Part 6 of Plaintiff's FOIA request, CBP's Office of Information Technology (OIT) searched the emails of the 14 TTP employees,[5] including the Director of TTP,[6] as well as the emails of five individuals in CBP senior leadership positions: Acting Commissioner Kevin K. McAleenan, his Chief of Staff Patrick Flanagan, Acting Deputy Commissioner Ronald Vitiello, Former Acting Deputy Commissioner Randolph Alles, and Executive Assistant Commissioner of the Office of Field Operations Todd C. Owen.

39.     CBP's OIT captures a copy of every e-mail message sent or received by all CBP email users through a process called e-mail journaling.  Through this process a copy of every sent and received message is archived in another location so that a backup copy exists even if the user deletes the e-mail from his or her mailbox.  OIT designed its email search to pull all emails sent or received, including "cc" and "bcc" emails, by the 19 individuals described above that

---

[4] CBP received numerous FOIA requests pertaining to Executive Orders 13,769 and 13,780.  As the records processed for one EO request were often responsive to multiple other FOIA requests, CBP chose to assign a single set of Bates numbers to all records processed about these EOs.  That is why the Bates numbers are not sequential.

[5] OIT searched the emails of the 14 OFO employees who were either assigned to TTP or had responsibilities in TTP from November 2016 to August 2017.

[6] CBP has withheld the identity of the Director of TTP pursuant to 5 U.S.C. § 552(b)(6) and (b)(7)(C).

contained the keywords identified in Part 6 of Plaintiff's FOIA request.  The time period

searched was November 9, 2016 until August 17, 2017 (the date the email search was run).

40.     The emails OIT pulled were reviewed to identify emails that contained any of the

keywords and related to the operation or functioning of the Global Entry program.  No emails

responsive to Part 6 of Plaintiff's FOIA request were identified.

41.     However, during the course of this review, CBP identified emails that were

responsive to Parts 4 and 5 of Plaintiff's FOIA request.  On October 6, 2017, CBP released these

48 pages of records in Bates numbers EOFOIACBP000000860-907.  *See* Exhibit G.

42.     Based on the information contained in the records released on October 6, 2017,

and conversations with the TTP Office, the FOIA Division determined that if there were any

additional records responsive to Parts 4 and 5 of Plaintiff's FOIA request, those records could be

identified by pulling the emails of the Director of TTP during the relevant timeframe.

43.     The Director of TTP would, at a minimum, be copied on any email involving a

decision made by CBP leadership involving a change of policy in the operation of the Global

Entry program and any guidance implementing such a change in policy.  Any such policy change

or guidance would have been reflected in an email communication or in an attachment to an

email.

44.     As discussed in paragraph 27, between November 9, 2016 and June 6, 2017 (the

date records of Global Entry membership revocations were pulled from GES), the only

(temporary) change to the operation of Global Entry in terms of membership eligibility was as a

result of EO 1, which was issued on January 27, 2017 and enjoined on February 3, 2017.  Thus,

OIT pulled all emails sent or received by the Director of TTP, including "cc" and "bcc" emails,

from January 27, 2017 until February 4, 2017.  This time frame was over-inclusive, as the only

known responsive communications in relation to a change in the operation of Global Entry after November 9, 2016 occurred between January 30, 2017 and February 2, 2017.[7]  However, this over-inclusive time frame ensured CBP would capture any known responsive records to Parts 4 and 5 of Plaintiff's FOIA request.

45.     The Director of TTP's emails were loaded into CBP's document review platform and reviewed to determine whether any were responsive to Parts 4 or 5 of Plaintiff's FOIA request.  On December 14, 2017, CBP released 258 pages of responsive records, in Bates numbers CBPBATES00004444-4701.  *See* Exhibit H.

46.     While reviewing the records that were ultimately produced on December 14, 2017, CBP identified two email chains, consisting of nine pages of records, which required further review and consultation.  In addition, 25 Microsoft Excel spreadsheets attached to the emails released on December 14, 2017 needed to be processed.

47.     On January 5, 2018, CBP released what it believed at the time would be the final nine pages of responsive records and 25 Microsoft Excel spreadsheets, in their native format, in response to Parts 4 and 5 of Plaintiff's FOIA request, in Bates numbers CBPBATES00008495-8528.  *See* Exhibit I.

48.     Following a review of its full production, CBP determined that a small number of records contained information that was either withheld in error, inappropriately marked, or required further redaction.  Accordingly, CBP removed certain redactions, applied others, appropriately labeled certain exemptions, and, on February 15, 2018, re-released Bates numbers CBPBATES00004480-4483, 00004533, 00004561, 00004589, 00004595, 00004603, 00004623,

---

[7] While emails sent or received on February 6 and 7, 2017 were also produced to Plaintiff on October 6, 2017, these emails pertain to other Trusted Traveler programs, not Global Entry.

00004628, with the appropriate redactions and the suffix "_UR" at the end of each Bates number to indicate that the records were being re-released with updated redactions. CBP also re-released EOFOIACBP0000001458-1506 (previously released as EOFOIACBP0000000242-322) and EOFOIACBP0000001507 (previously released as EOFOIACBP0000000323). Finally, CBP released one additional record responsive to Part 3 of Plaintiff's FOIA request, Bates number EOFOIACBP0000001508, as discussed in paragraph 36 above. *See* Exhibit J.

49.     Based on my experience in the FOIA Division, my discussions with knowledgeable agency personnel, as well as my understanding of the scope of Plaintiff's request, and information gathered from the documents themselves, I aver that the searches described herein were reasonably calculated to uncover all potentially responsive records and that all files likely to contain relevant documents were searched.

### V.     CBP's Withholdings Pursuant to FOIA Exemptions

50.     CBP produced to Plaintiff, in total, 503 pages of non-exempt records, or non-exempt portions of records, and 26 spreadsheets in native Microsoft Excel format.  CBP withheld material pursuant to FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  These withholdings are described in detail below.

#### a.  5 U.S.C. § 552(b)(5): Deliberative materials

51.     Exemption (b)(5) under the FOIA exempts from mandatory disclosure matters that are "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  Exemption (b)(5) encompasses both statutory privileges and those commonly recognized by case law.  The privileges incorporated into this exemption pertain to an agency's decision-making process (*i.e.*,

the deliberative-process privilege), the attorney work-product privilege, and the attorney-client privilege.

52.     CBP invoked Exemption (b)(5) based on the deliberative-process privilege in instances when records contained drafts of documents or pre-decisional communications. Specifically, the records redacted under Exemption (b)(5) were intra-agency email communications containing draft language on the impact of EO1 on Trusted Traveler Programs, and in five of the seven pages where Exemption (b)(5) was applied, the information involved draft guidance for the public.  The purpose of the deliberative-process privilege is to (1) encourage open, frank discussions on matters of policy between subordinates and superiors; (2) protect against premature disclosure of proposed policies before they are actually adopted; and (3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.  The privilege protects the decision-making processes of government agencies and the integrity of the deliberative process itself where the exposure of that process would result in harm.

53.     Release of the materials withheld under Exemption 5, which are pre-decisional and deliberative with respect to the impact of Executive Order 13,769 on Trusted Traveler Programs, could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when agency officials are discussing and crafting guidance on a time-sensitive issue.  Disclosure of this information would also impede the ability of responsible government officials to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action.

54.     As identified in the attached *Vaughn* document index, CBP has applied

Exemption (b)(5) to portions of seven pages of records released to Plaintiff.  *See* Exhibit K.

### b.  *5 U.S.C. § 552(b)(6) and 5 U.S.C. § 552(b)(7)(C): Personally Identifiable Information (PII)*

55.     Exemption (b)(6) under the FOIA exempts from mandatory disclosure "personnel

and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy."  This protection is afforded to information that would infringe on

the personal privacy of individuals about whom it pertains.  The determination whether

disclosure "would constitute a clearly unwarranted invasion of personal privacy" involves a

balancing of the public's right to know the information against the individual's right to privacy.

56.     Exemption (b)(7)(C) under the FOIA exempts from mandatory disclosure

"records or information compiled for law enforcement purposes" the disclosure of which "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  This

exemption protects, among other information, the identity of law enforcement personnel and

third parties referenced in files compiled for law enforcement purposes.  The exemption is

intended to protect law enforcement personnel from harassment and annoyance in their private

lives due to the conduct of their official duties, which could conceivably result from public

disclosure of their identity.  The exemption is also intended to protect third parties, whose

identities are revealed in law enforcement files, from comment, speculation and stigmatizing

connotation associated with being identified in a law enforcement record.  In asserting this

exemption, each piece of information was scrutinized to determine the nature and strength of any

individual's privacy interest.  In withholding the information, the individual's privacy interest is

balanced against the public's interest in disclosure.  In each instance, it was determined that

whatever public interest there might be, if any, in knowing the personal information of the

14

individuals identified in the relevant records did not outweigh the privacy interests of said individuals.

57.     CBP applied Exemptions (b)(6) and (b)(7)(C) in tandem, such that information protected by one is also protected by the other.  CBP applied Exemptions (b)(6) and (b)(7)(C) to personally identifiable information of Trusted Traveler members, such as their names, phone numbers, email addresses, dates of birth, and various identification numbers, including Trusted Traveler member identification numbers, contained in GES records or agency email communications.  CBP also applied Exemptions (b)(6) and (b)(7)(C) to personally identifiable information of certain CBP employees, such as their names, phones numbers, email addresses, and work addresses, contained in agency email communications.  CBP did not, however, apply Exemptions (b)(6) and (b)(7)(C) as a categorical matter to all such information.  For example, CBP released names of senior officials whose identities are widely known among the public.

58.     The individual's right to have his or her identity withheld from disclosure clearly outweighs the public interest, if any, in knowing the withheld information described in the paragraph above.  First, the identification of CBP officials in association with the performance of their duties in an operational context risks unwarranted attribution and attention to the employee beyond the confines of their job and into their personal life, and disclosing the identities of these specific individuals would not meaningfully shed light on how the government performs its duties.  To reveal the withheld information would constitute a clearly unwarranted invasion of personal privacy.  With regard to third parties such as Trusted Traveler members, they likewise have a privacy interest to be free of unwarranted attention, and releasing the identities of third parties merely mentioned in agency records, without their authorization, would violate their legitimate privacy interests.  Whatever minimal interest the public could have in knowing the

personally identifiable information of Trusted Traveler members does not outweigh the personal privacy interests of these third parties.  Revealing the withheld information would constitute a clearly unwarranted invasion of personal privacy.

59.     CBP has applied Exemptions (b)(6) and (b)(7)(C) in numerous instances across all sets of records it has released.  These particular withholdings are not reflected in the *Vaughn* document index, but an example of the personally identifiable information redacted from a GES revocation record and from an agency email communication is reflected in Exhibit L.

> **c.  5 U.S.C. § 552(b)(7)(E): Records Or Information Compiled For Law Enforcement Purposes**

60.     Exemption (b)(7)(E) under the FOIA exempts from mandatory disclosure "records or information compiled for law enforcement purposes" that, if released, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  CBP is constrained in describing the techniques, procedures, and guidelines by its Exemption (b)(7)(E) withholdings, so as to avoid revealing information CBP seeks to protect, which is not generally known to the public.  The discussion below thus aims to fairly represent the Exemption (b)(7)(E) withholdings but does not purport to be an all-inclusive rendering of all withheld information.

61.     To be eligible for withholding under Exemption (b)(7), records or information must be compiled for law enforcement purposes.  As articulated in paragraph 11 above, the records at issue were compiled for law enforcement purposes in that the information is collected and used by CBP in its mission to secure the borders and facilitate legitimate travel to the United States.

62. CBP invoked Exemption (b)(7)(E) to withhold the following types of information compiled for law enforcement purposes:

***i. Internal comments on revocation records from the GES database*** – CBP withheld under Exemption (b)(7)(E) certain "internal comments" from Global Entry revocation records.[8] These records are contained in CBP's GES database. The "internal comments" refer to the specific reasons why TTP revoked an individual's Global Entry membership. CBP released the internal comments if the revocation was related to E.O. 13769. (As noted, a search in GES for the key words in Part 6 of Plaintiff's FOIA request did not locate any responsive records.) CBP withheld the internal comments if the revocation was for any other reason besides E.O. 13769.

***ii. Ombudsman comments on revocation records from the GES database*** – CBP withheld under Exemption (b)(7)(E), as well as Exemptions (b)(6) and (b)(7)(c), certain "Ombudsman comments" from Global Entry revocation records. These records are contained in CBP's GES database. The "Ombudsman comments" refer to the specific reasons why the OMB reversed or sustained a TTP decision to revoke an individual's Global Entry membership (none of the reasons were related to E.O. 13769). Disclosure of the internal comments and Ombudsman comments, as described above, would permit individuals to identify the types of information CBP maintains for assessing risk and permit individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, or effectuate other countermeasures, thus, corrupting the integrity of CBP's approach to risk assessment through ongoing

---

[8] In the revocation records, there are fields for both external comments and internal comments. The external comments are provided to the Global Entry member at the time the membership is revoked. Internal comments, however, are not generally released to the members.

techniques, operations, and investigations. Specifically, revealing the comments described above would allow individuals to have better insight into what information CBP has, and how that affects eligibility for Trusted Traveler membership, which could reasonably support their efforts to circumvent the law.

*iii.  Information regarding CBP's targeting process* – CBP applied Exemption (b)(7)(E) to information which relates to CBP's process for assessing risk on travelers seeking to enter the United States.  This includes information regarding ongoing investigations or investigative techniques and procedures.  Disclosure of such information would advise potential violators of CBP's law enforcement techniques and procedures for assessing risk, thereby enabling them to circumvent the law, avoid detection, and evade apprehension.  Moreover, revealing information regarding ongoing investigations would thwart CBP's current law enforcement efforts and risk individuals circumventing CBP's future efforts. Even commonly known techniques and procedures may be protected where the circumstances of their usefulness are not widely known.

*iv.  Internal system codes* – CBP withheld under Exemption (b)(7)(E) internal system codes and information related to CBP system interfaces. Disclosure of such information could be used to locate, access, and navigate internal law enforcement computer systems or databases and risk compromising the integrity of GES and other CBP systems.

*v.  Internal email addresses of group list serves* – CBP withheld under Exemption (b)(7)(E) email addresses of group list serves which are not known to the public and only used within the agency, because disclosure of that information would reveal the means by which CBP communicates law enforcement information and could reasonably be expected to risk compromising the integrity of those email communications.

63.     As identified in the attached *Vaughn* document index, CBP has applied

Exemption (b)(7)(E) in numerous instances across many of the documents it has released. *See*

Exhibit K.

## VI.     Determination Regarding Segregability

64.     All information CBP has withheld is exempt from disclosure pursuant to a FOIA

exemption or is not reasonably segregable, whether because it is so intertwined with protected

material that segregation is not possible, or its release would have revealed the underlying

protected material, or segregation is not required because the withheld material is attorney work

product.  In responding to Plaintiff's requests in this case, CBP analysts and attorneys reviewed

each release of records line-by-line to confirm that any withholdings were proper, examined

whether any discretionary waiver of an exemption was warranted, and determined whether any

segregable, non-exempt information could further be released.  All reasonably segregable

portions of the responsive records have been released to Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed this *16* day of February, 2018.

PATRICK A. HOWARD
FOIA Division
Privacy and Diversity Office
Office of the Commissioner
U.S. Customs and Border Protection
U.S. Department of Homeland Security

19

# Exhibit A





  American-Arab Anti-Discrimination Committee

March 8, 2017

*Via DHS-CBP Online FOIA Request Form*

**To:** **U.S. Customs and Border Protection**
**Freedom of Information Act/Privacy Act Officer**

**Re:** **Request under Freedom of Information Act (FOIA)**
**Expedited Processing Requested**
**Fee Waiver & Limitation Requested**

Dear FOIA-Privacy Act Officer:

On behalf of our client, the Arab-American Anti-Discrimination Committee ("ADC"), the Law Office of R. Andrew Free and Siskind Susser, P.C. hereby respectfully submit this Freedom of Information Act (FOIA) request to the United States Customs and Border Protection agency ("CBP"), for agency records as defined by FOIA and as described below. ADC seeks expedited processing of this request and waiver of associated fees, or if not waiver, then limitation of associated fees.

**A. Records Requested**

Specifically, ADC requests the following agency records created by or maintained in the possession, custody, or control of CBP:

(1) All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request.

(2) All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and November 8, 2017.

(3) All agency records showing reversal or confirmation of CBP's GES revocation decisions by the CBP Ombudsman's office.

(4) Any agency policy, practice, memorandum, training, guidance, communication, or other similar record created on or after November 9, 2017 relating to the suspension, revocation, or termination of GES.

(5) Any agency policy, practice, memorandum, training, communication or other similar record created on or after November 9, 2017 that alters, modifies, or in any way affects CBP's prior practices and policies with respect to GES screening, investigation, or revocation.

(6) Any agency records created on or after November 9, 2017 relating to operation or functioning of the GES program containing any of the following the words or phrases, whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or "Travel Ban".

## B. About the Requestor

ADC is a civil rights organization committed to defending the rights of people of Arab descent and promoting their rich cultural heritage. ADC is the largest Arab American grassroots organization in the United States. Founded in 1980 by former U.S. Senator James Abourzek, ADC's objectives include combating stereotypes and discrimination against and affecting the Arab American community in the United States, serving as a public voice for the Arab American community in the United States on domestic and foreign policy issues, and educating the American public in order to promote great understanding of Arab history and culture.  ADC engages in wide-ranging advocacy, education, and organizing to defend and promote human rights and civil liberties of Arab Americans and other persons of Arab heritage.

## C. About the Global Entry System

The Global Entry System is a trusted traveler program administered by the United States Customs and Border Protection agency.  GES "expedites the movement of low-risk air travelers into the United States by providing an alternate inspection process for pre-approved, pre-screened travelers."  8 C.F.R. § 235.12(a) (2012). This system allows participants a faster and easier entry into the United States in selected airports across the United States.  *Id*.  Members enter the United States through automatic kiosks at select airports.

To be eligible, applicants for the program must meet a number of requirements including status as a United States citizen, national, or legal permanent resident, and hold a valid travel document, among a few other requirements.  8 C.F.R. 235.12(b).  An approved participant may be suspended or removed (revoked) from the program for reasons that are listed in the regulation, the most broad of which states revocation can occur if "CBP, at its sole discretion,

determines that such action is otherwise necessary." 8 C.F.R. 235.12(j). Historically, less than one percent of GES participants were subject to revocation.[1]

### D. GES Revocations of Arabs and Muslims Following the 2016 Presidential Election and Acceleration of Reports Coinciding with Muslim Ban 1.0

ADC has received reports that immediately following the presidential election in November, persons who were granted access to the GES had the privilege revoked by CBP. These are not isolated incidents, it appears, but rather, part of a larger pattern in which GES participants with Arab or Muslim names or ancestry have been singled out for revocation in the absence of any material change in their risk profile. Physicians, bankers, students, and businesspeople—all long-time holders of GES status—have suddenly and inexplicably faced new scrutiny. The vast majority of those reporting revocation are U.S. citizens.

Beginning in late January 2017, in the wake of Presidential Executive Orders regarding border security, immigration, and travel targeting legal immigrants, refugees, and Arab or Muslim persons, tens of thousands of people across the country actively engaged in protest and direct action in airports around the country.[2] Pro bono attorneys and grassroots organizations like ADC sprung into action to help arriving travelers avoid detention and banishment in the face of a surprise, sweeping Presidential order limiting many individuals' travel into the United

---

[1] Seth Kugel, *Global Entry and Company: Worth the Price?*, The New York Times (April 24, 2014), https://www.nytimes.com/2014/04/24/travel/global-entry-and-company-worth-the-price.html (last visited at Feb. 6, 2017).

[2] Alan Taylor, *A Weekend of Protest Against Trump's Immigration Ban,* Jan. 30, 2017, https://www.theatlantic.com/photo/2017/01/a-weekend-of-protest-against-trumps-immigration-ban/514953/ (last visited March 7, 2017); John Bacon and Alan Gomez, *Protests Against Trump's Immigration Plan Rolling in More Than 30 cmities*, USA Today, Jan. 29, 2017, www.usatoday.com/story/news/nation/2017/01/29/homeland-security-judges-stay-has-little-impact-travel-ban/97211720/ (last visited March 7, 2017); *Tens of Thousands in U.S. Cities Protest Trump Immigration Order*, Fortune, Jan. 29, 2017, http://fortune.com/2017/01/29/trump-immigration-order-protests/ (last visited March 7, 2017); Emanuella Grinberg and Madison Park, *Second Day of Protests over Trump's Immigration Policies*, CNN, Jan. 30, 2017, http://www.cnn.com/2017/01/29/politics/us-immigration-protests/ (last visited March 7, 2017).

States.[3]  Lawsuits were filed from coast to coast, and nearly ever court to rule found the Muslim Ban likely violated the law.[4]  As a consequence, the Administration abandoned it.

The President issued a modified Executive Order on March 6, 2017—this time targeting *six* Muslim-majority countries rather than *seven*[5]—"but the president's revisions did little to halt criticism from Democrats and immigrant rights advocates, who predicted a renewed fight in the courts."[6]

ADC is aware of ongoing, public allegations of individuals being identified, selected, scrutinized, and treated inappropriately by employees and agencies of the federal government—and specifically CBP—because they are Arab or Muslim or are believed to be Arab or Muslim.[7] (Indeed, while campaigning for the presidency, the current U.S. President "called for 'a total and complete shutdown' of Muslim immigration to the US."[8]) For example, complaints were filed with the CBP in January 2017, alleging that Muslim Americans were unduly scrutinized and invasively questioned regarding their religious beliefs and political opinions.[9]

---

[3] Jonah Engel Bromwich, *Lawyers Mobilize at Nation's Airports After Trump's Order*, New York Times, Jan. 29, 2017, www.nytimes.com/2017/01/29/us/lawyers-trump-muslim-ban-immigration.html (last visited March 7, 2017).

[4] Alexander Burns, *Legal Challenges Mount Against Trump's Travel Ban*, New York Times, Jan. 30, 2017, https://www.nytimes.com/2017/01/30/us/legal-challenges-mount-against-trumps-travel-ban.html (last visited March 7, 2017).

[5] Sabrina Siddiqui, Lauren Gambino, and Oliver Laughland, *Trump Travel Ban: New Order Targeting Six Muslim-Majority Countries Signed*, The Guardian, March 6, 2017, https://www.theguardian.com/us-news/2017/mar/06/new-trump-travel-ban-muslim-majority-countries-refugees (last visited March 7, 2017).

[6] Glenn Thrush, *Trump's New Travel Ban Blocks Migrants from Six Nations, Sparing Iraq*, New York Times, Mar. 6, 2017, https://www.nytimes.com/2017/03/06/us/politics/travel-ban-muslim-trump.html (last visited March 7, 2017).

[7] Emma Graham-Harrison, U.*S. Border Agents Ask Muhammad Ali's Son: 'Are You a Muslim?'*, The Guardian, Feb. 25, 2017, https://www.theguardian.com/us-news/2017/feb/25/muhammad-ali-son-detained-questioned-us-border-control (last visited March 7, 2017).

[8] Sabrina Siddiqui, Lauren Gambino, and Oliver Laughland, *Trump Travel Ban: New Order Targeting Six Muslim-Majority Countries Signed*, The Guardian, March 6, 2017, https://www.theguardian.com/us-news/2017/mar/06/new-trump-travel-ban-muslim-majority-countries-refugees (last visited March 7, 2017).

[9] CAIR-Florida, *CAIR-FL Files 10 Complaints with CBP After the Agency Targeted and Questioned American Muslims About Religious and Political Views*, Jan. 18, 2017, https://www.cairflorida.org/newsroom/press-releases/720-cair-fl-files-10-complaints-with-cbp-

Case 1:17-cv-00078-RC Document 15-1 Filed 04/19/17 Page 25 of 70

US Customs & Border Protection FOIA/PA Officer
FOIA/PA Request for Global Entry System Revocation Records
March 8, 2017
Page 5 of 6

As reported in multiple news outlets, these abuses include CBP's denial or revocation of GES privileges.[10] More generally, individuals who have GES membership are nonetheless being detained and questioned. For example, NASA employee Sidd Bikkannavar was "detained by [CBP] and pressured to give the CBP agents his phone and access PIN," even though Mr. Bikkannavar was a current Global Entry member.[11]

Unsurprisingly, then, public interest is presently heightened regarding CBP's multi-faceted operations,[12] including the profiling of persons based on religion, ethnicity, or nationality, the GES,[13] and CBP's access and use of travelers' digital information.[14]

**E. ADC requests, and CBP should provide, expedited processing for this request, pursuant to FOIA.**

ADC is primarily engaged in disseminating information[15], as contemplated by FOIA, including information about the federal government's activities. As explained above, ADC also has a compelling need for the records requested, because of the present, genuine, and serious urgency to inform the public about the federal government's activities which are referenced, documented, and explained in the records requested, such as activities regarding GES,

---

after-the-agency-targeted-and-questioned-american-muslims-about-religious-and-political-views.html (last visited March 7, 2017).

[10] Sarah Harvard, *US Customs is Revoking Muslim American Travelers' Global Entry Cards, Lawyers Say*, Mic.com, Feb. 16, 2017, https://mic.com/articles/168606/us-customs-is-revoking-muslim-american-travelers-global-entry-cards-lawyers-say (last visited March 7, 2017); Andrew Sheivachman*, Muslim-American Travelers are Quietly Having Global Entry Privileges Revoked*, Skift, Feb. 18, 2017, https://skift.com/2017/02/18/muslim-american-travelers-are-quietly-having-global-entry-privileges-revoked/ (last visited March 7, 2017).

[11] Loren Grush, *A US-Born NASA Scientist Was Detained at the Border Until He Unlocked His Phone*, The Verge, Feb. 12, 2017, http://www.theverge.com/2017/2/12/14583124/nasa-sidd-bikkannavar-detained-cbp-phone-search-trump-travel-ban, (last visited March 7, 2017).

[12] United States Customs and Border Protection (CBP) is an agency within the Department of Homeland Security. CBP is a "unified border entity" that addresses "customs, immigration, border security, and agricultural protection." U.S. Customs and Border Protection, www.cbp.gov/about, (last visited March 7, 2016).

[13] Lily Herman, *Muslim Travelers Entering the U.S. are Having Their Global Entry Cards Revoked*, Teen Vogue, Feb. 17, 2017, http://www.teenvogue.com/story/muslim-travelers-entering-the-us-are-having-their-global-entry-cards-revoked, (last visited March 7, 2017).

[14] Loren Grush, *A US-Born NASA Scientist Was Detained at the Border Until He Unlocked His Phone*, The Verge, Feb. 12, 2017, http://www.theverge.com/2017/2/12/14583124/nasa-sidd-bikkannavar-detained-cbp-phone-search-trump-travel-ban, (last visited March 7, 2017).

[15] *See, e.g.,* www.adc.org

Case 1:17-cv-00078-RC Document 15-1 Filed 04/19/17 Page 26 of 70

US Customs & Border Protection FOIA/PA Officer
FOIA/PA Request for Global Entry System Revocation Records
March 8, 2017
Page 6 of 6

individuals' and groups' travel privileges, statuses, and monitoring, and associated decision-making, record-keeping, and changes in practice and policy. Simply put, ADC plans to analyze, discuss, and disseminate to the public--at no cost to the public—the information obtained by this Request. The records requested are not sought for commercial use.

**F.  ADC is entitled to a waiver of fees for this request, or, if not fully waived, then a limitation on fees for this request, pursuant to FOIA.**

ADC requests a waiver of all fees associated with this request and the records provided in response, because disclosure of the requested records and information contained therein is in the public interest, and the disclosure is likely to contribute significantly to public understanding of the government's operations and activities. Again, ADC does not seek the records for commercial use, and will disseminate the information to the public at no cost to the public.  Moreover, ADC qualifies as a representative of the news media based on its information dissemination activities. Thus, ADC is entitled to a fee waiver.

Please provide all records in their native format, preserving and producing any associated metadata.

If you have any questions or require further information, please do not hesitate to contact me at 844-321-3221 or Andrew@ImmigrantCivilRights.com

I AFFIRM THAT THE INFORMATION PROVIDED SUPPORTING THE REQUEST FOR EXPEDITED PROCESSING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Very truly yours,

R. Andrew Free

Co-Counsel for ADC

# Exhibit B



**Request Details**

**Tracking Number :** *CBP-2017-037684*

Submitted — Evaluation — Assignment — Processing

Closed

---

## Contact Information

Full Name : Mr. Robert A. Free

Organization : Law Office of R.

Andrew Free

Email Address :
Andrew@ImmigrantCivilRights.com

Phone Number : 844-321-3221

Fax Number : 615-829-8959

Mailing Location : United States/U.S. Territories

Address Line 1 : P.O. Box 90568

Address Line 2 :

City : Nashville

State/Province : Tennessee

Zip Code/Postal Code : 37209

---

## Request Information

Agency : Perfected non-traveler

requests

Will Pay Up To : $250.00

Date Submitted : 03/08/2017

Estimated Date of Completion : 04/11/2017

Request Phase : Assignment

Request Track : Simple

Final Disposition : Undetermined

---

## Description :

1383/2000

\*\*See letter attached for full description. \*\* ADC requests the following agency records created by or maintained in the possession, custody, or control of CBP: (1) All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request. (2) All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and November 8, 2017. (3) All agency records showing reversal or confirmation of CBP's GES revocation

---

## Request a Fee Waiver

Made Request ? Yes

## Request Expedited Handling

Made Request ? Yes

See attached.

See attached.

## Supporting Files

Attached Files :

| Attached File | Type | Size (MB) |
|---|---|---|
| *2017.3.8 GES FOIA v.2.pdf* | PDF | 0.30 |

## Payments

No payments to display.

## Invoice

Total Amount Billed : $0.00
Date Sent :
No invoice has been added.

## Correspondence with Requester

| Subject | From | Date | *Detail* |
|---|---|---|---|
| FOIA Request CBP-2017-037684 Submitted | | 2017-03-08 | |

## Released Records

No records have been released.

# Exhibit C





 American-Arab Anti-Discrimination Committee

**March 9, 2017**

*Via DHS-CBP Online FOIA Request Form*

> **To:** U.S. Customs and Border Protection
> Freedom of Information Act/Privacy Act Officer

> **Re:** CBP-2017-037684
> <u>CORRECTED</u> Request under Freedom of Information Act (FOIA)

Dear FOIA-Privacy Act Officer:

This request is intended to modify and correct the scope of records requested on March 8, 2017, which the agency assigned CBP-2017-037684. It incorporates by reference all information contained in the request, but **modifies the dates for which records are requested, which inadvertently and mistakenly stated November 9, <u>2017</u>—rather than November 9, 2016, which was the intended timeframe.** As corrected, the records request should read:

### A. Records Requested

Specifically, ADC requests the following agency records created by or maintained in the possession, custody, or control of CBP:

(1) All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request.

(2) All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and November 8, <u>**2016**</u>.

(3) All agency records showing reversal or confirmation of CBP's GES revocation decisions by the CBP Ombudsman's office.

(4) Any agency policy, practice, memorandum, training, guidance, communication, or other similar record created on or after November 9, **2016** relating to the suspension, revocation, or termination of GES.

(5) Any agency policy, practice, memorandum, training, communication or other similar record created on or after November 9, **2016** that alters, modifies, or in any way affects CBP's prior practices and policies with respect to GES screening, investigation, or revocation.

(6) Any agency records created on or after November 9, **2016** relating to operation or functioning of the GES program containing any of the following the words or phrases, whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or "Travel Ban".

Please update your records of this request accordingly.

If you have any questions or require further information, please do not hesitate to contact me at 844-321-3221 or Andrew@ImmigrantCivilRights.com

Very truly yours,

R. Andrew Free

Co-Counsel for ADC

# Exhibit D

**Request Details**

**Tracking Number :** *CBP-2017-038185*



Submitted  Evaluation  Assignment  Processing

Closed

┌─ **Contact Information** ─────────────────────────────────┐

Full Name : Mr. Robert A. Free

Mailing Location : United States/U.S. Territories

Organization : Law Office of R.

Address Line 1 : P.O. Box 90568

Andrew Free

Email Address : Andrew@ImmigrantCivilRights.com

Address Line 2 :

Phone Number : 844-321-3221

City : Nashville

State/Province : Tennessee

Fax Number : 615-829-8959

Zip Code/Postal Code : 37209
└────────────────────────────────────────────────────────┘

┌─ **Request Information** ─────────────────────────────────┐

Agency : U.S. Customs and Border Protection

Request Phase : Assignment

Request Track : Simple

Will Pay Up To : $250.00

Final Disposition : Undetermined

Date Submitted : 03/09/2017

Estimated Date of Completion : 04/07/2017
└────────────────────────────────────────────────────────┘

## Description :

1465/2000

**See Attached Letters** - This Request modifies and corrects the date limitations set forth in CBP-2017-037684 to reflect the requested timeframe of November 6, 2016, rather than 2017, for all relevant agency records specified. ADC Requests: (1) All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request. (2) All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and

┌─ **Request a Fee Waiver** ──────────┐  ┌─ **Request Expedited Handling** ──────────┐

Made Request ? Yes

Made Request ? Yes

See Attached Letter.

See Attached Letter.

## Supporting Files

Attached Files :

| Attached File | Type | Size (MB) |
|---|---|---|
| *2017.3.9 Modification to GES FOIA.pdf* | PDF | 0.26 |
| *2017.3.8 CBP FOIA Request Confirmation.pdf* | PDF | 0.09 |

## Payments

No payments to display.

## Invoice

Total Amount Billed : $0.00
Date Sent :
No invoice has been added.

## Correspondence with Requester

| Subject | From | Date | *Detail* |
|---|---|---|---|
| FOIA Request CBP-2017-038185 Submitted | | 2017-03-09 | |

## Released Records

No records have been released.

# Exhibit E

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE, 1705 DeSales St., NW, Suite 500, Washington, D.C. 20036 | ) ) ) ) ) | |
| *Plaintiff,* | ) ) | Civil Action No.: 1:17-cv-00708 |
| v. | ) ) | |
| U.S. CUSTOMS AND BORDER PROTECTION, 1300 Pennsylvania Avenue NW, Washington, D.C. 20229 | ) ) ) ) ) | |
| *Defendant.* | ) | |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## Introduction

1.  This is an action under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552, seeking unlawfully withheld agency records relating to actions taken by Defendant U.S. Customs and Border Protection ("CBP") to revoke, suspend, or terminate participation in the Global Entry System ("GES" or "Global Entry") for certain Arab and Muslim U.S. Citizens and Lawful Permanent Residents ("LPRs") without any legal justification.

2.  Global Entry is a CBP trusted traveler program that allows expedited security clearance and admission for pre-approved, low-risk travelers upon arrival in the United States. Approved GES travelers enter the United States through automatic kiosks at select airports and are normally exempted from the normal interview process.

3. Shortly after the November 2016 presidential election, and accelerating significantly following the new administration's rollout of its first attempt at a Muslim travel ban, Plaintiff American-Arab Anti-Discrimination Council ("ADC") began receiving reports that Arabs and Muslims who were previously approved for GES had these approvals inexplicably revoked by CBP.

4. As documented by ADC, and subsequently, by several media outlets, these Global Entry revocations were not isolated incidents. Rather, they are part of a wider pattern in which GES-approved travelers with Arab or Muslim names or ancestry are singled out for revocation in absence of any material change in circumstance or security risk.

5. ADC documented cases of physicians, bankers, students, and businesspeople who are long-time GES participants and who saw their approvals inexplicably and simultaneously revoked.

6. This pattern corresponded with the unexplained, heightened scrutiny—and in many cases, abusive questioning by CBP officials—directed at Arab and Muslim travelers in the wake of the new administration's Muslim travel bans.

7. In early March 2017, ADC filed FOIA requests with CBP seeking records maintained by the agency in relation to Global Entry revocations, suspensions, terminations, confirmations, and policy practices. Specifically, ADC sought:

   a. All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request;

   b. All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and November 8, 2016.

   c. All agency records showing reversal or confirmation of CBP's GES revocation decisions by the CBP Ombudsman's office;

d. Any agency policy, practice, memorandum, training, guidance, communication, or other similar record created on or after November 9, 2017 relating to the suspension, revocation, or termination of GES;

e. Any agency policy, practice, memorandum, training, communication or other similar record created on or after November 9, 2016 that alters, modifies, or in any way affects CBP's prior practices and policies with respect to GES screening, investigation, or revocation; and

f. Any agency records created on or after November 9, 2016 relating to operation or functioning of the GES program containing any of the following the words or phrases, whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or "Travel Ban."

8. ADC sought expedited processing of these requests, citing the urgent need to inform the public about CBP's actions in suspending, revoking, or terminating GES authorization for Arabs and Muslims.

9. CBP has failed to disclose the requested agency records within the time period specified by Congress or offer any meaningful estimate of when these records will become available.

10. Accordingly, ADC seeks declaratory and injunctive relief under the Act to compel DHS to search for and produce the records requested.

## **Jurisdiction and Venue**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202. Venue is proper under 5 U.S.C. § 552(a)(4)(B) because ADC brings this action in the District of Columbia.

## Parties

12.  Plaintiff ADC is a civil rights organization committed to defending the rights of people of Arab descent and promoting their rich cultural heritage. ADC is the largest American-Arab grassroots organization in the United States. Founded in 1980 by former Senator James Abourzek, ADC's objectives include combating stereotypes and discrimination against and affecting the Arab American community in the United States, serving as a public voice for the Arab American community in the United States on domestic and foreign policy issues, and educating the American public in order to promote greater understanding of Arab history and culture. ADC engages in wide-ranging advocacy, education, and organizing to defend and promote human rights and civil liberties of Arab Americans and other persons of Arab heritage.

13.  CBP is an executive agency of the United States government and is responsible for administering the Global Entry program. CBP is an "agency "within the meaning of 5 U.S.C. § 552(f)(1).

14. CBP has custody, possession and control over the records ADC seeks.

## Plaintiff's Requests and CBP Responses

15.  On March 8, 2017, ADC submitted the FOIA request attached hereto as Exhibit A to CBP via the agency's online FOIA portal.

16. CBP acknowledged receipt of ADC's request on or about March 8, 2017 and assigned it Case Number CBP-2017-037684. Exhibit B.

17. The agency categorized ADC's request as a "perfected non-traveler" request and assigned it to the Simple request track.

18.  On March 9, 2017, ADC submitted a follow-on request correcting and clarifying the date ranges specified the March 8, 2017 request, attached as Exhibit C.

19. CBP acknowledged receipt of ADC's request on or about March 9, 2017 and assigned it Case Number CBP-2017-038185. Exhibit D.

20. Since acknowledging receipt of Plaintiff's requests, CBP has failed disclose records in accordance with the timing limitations set forth by the FOIA

## Claims for Relief

### Count I: Violation of the FOIA - Improper Withholding of Agency Records

21. All previous paragraphs are incorporated as though fully set forth herein.

22. Plaintiff has a legal right under the FOIA to obtain agency records described in the March 2017 requests assigned Case Numbers **CBP-2017-038185** and **CBP-2017-037684.**

23. No legal basis exists for CBP's failure to adequately search for and promptly disclose responsive agency records in accordance with the timing and other requirements of the Act.

24. CBP's failure to make timely, reasonable efforts to search for responsive agency records, and its wrongful withholding of agency records sought in connection with ADC's requests violates the FOIA.

25. CBP's wrongful withholding of the agency records sought in connection with ADC's requests violates the FOIA. 5 U.S.C. §§ 552(a)(3)(A) and 552(a)(3)(C).

26. CBP's failure to timely respond to ADC's requests has constructively exhausted Plaintiff's administrative remedies.

### Count II: Violation of the FOIA – Unlawful Denial of Expedited Processing

27. All previous paragraphs are incorporated as though fully set forth herein.

28. CBP violated the FOIA by constructively denying ADC's expedited processing request.

29. ADC is an organization primarily involved in the dissemination of information.

30. There is an urgent need to inform the public of CBP's documented actions in suspending, revoking, or terminating Global Entry approvals for Arab and Muslim travellers.

31. ADC properly sought expedited processing of both FOIA requests.

32. CBP has failed to process either request within ten (10) business days.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment enter in her favor and against Defendant, and that the Court:

A.    Order Defendant and any of Defendant's agents or other persons, departments, or components acting for, with, by, through, or under them, to conduct an expedited, search for records responsive to Plaintiff's requests under the FOIA;

B.    Permanently enjoin and restrain Defendant and any of Defendant's agents or other persons, departments, or components acting for, with, by, through, or under them from withholding the agency records at issue in this case;

C.    Order Defendant to produce to Plaintiff on an expedited basis all agency records which are responsive to Plaintiff's requests and not exempt pursuant to FOIA;

D.    Award Plaintiff reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and,

E.    Award all other relief to Plaintiff that the Court deems just, equitable, and proper.

Date: April 18, 2017                         Respectfully submitted,

                                            /s/ R. Andrew Free
                                            **R. ANDREW FREE, No. 30513**
                                            P.O. Box 90568

6

Nashville, TN 37209
Tel. 844-321-3221
Fax: 615-829-8959
Andrew@immigrantcivilrights.com
*Co-Counsel for the Plaintiff*


/s/ Gregory H. Siskind*
Siskind Susser, PC
1028 Oakhaven Road
Memphis, TN 38119
Tel. 901-682-6455
Fax. 901-339-9604
gsiskind@visalaw.com
*Co-Counsel for the Plaintiff*

*Application for admission forthcoming

# Exhibit F

August 11, 2017


Robert A. Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209


Re:     CBP-2017-037684

Dear Mr. Free:

This is an initial partial response to your Freedom of Information Act (FOIA) request to U.S.
Customs and Border Protection (CBP), dated March 8, 2017, which seeks records from CBP
concerning the following:
1.  All agency records relating to each revocation, suspension, or termination of Global
    Entry System (GES) participation from November 9, 2016 to the date of the agency's
    response to this request.
2.  All agency records showing the annual total of revocations, suspensions, or terminations
    of (GES) permissions between January 1, 2012 and November 8, 2017.
3.  All agency records showing reversal or confirmation of CBP's GES revocation decisions
    by the CBP Ombudsman's office.
4.  Any agency policy, practice, memorandum, training, guidance, communication, or other
    similar record created on or after November 9, 2017 relating to the suspension,
    revocation, or termination of GES.
5.  Any agency policy, practice, memorandum, training, communication or other similar
    record created on or after November 9, 2017 that alters, modifies, or in any way affects
    CBP's prior practices and policies with respect to GES screening, investigation, or
    revocation.
6.  Any agency records created on or after November 9, 2017 relating to operation or
    functioning of the GES program containing any of the following the words or phrases,
    whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or
    "Travel Ban".


The records included in this response have been deemed responsive to your request.


This release includes a total of 189 pages of records responsive to your clients' request, marked
as EO FOIA CBP 0000000057, and 0000000242-0000000449.  CBP has determined that 189
pages of the records are partially released, pursuant to Title 5 U.S.C. § 552 (b)(6), (b)(7)(C) and
(b)(7)(E).

**Exemption (b)(6)** exempts from disclosure personnel or medical files and similar files the
release of which would cause a clearly unwarranted invasion of personal privacy.  This requires a
balancing of the public's right to disclosure against the individual's right privacy.  The types of
documents and/or information that we have withheld may consist of birth certificates,
naturalization certificates, driver license, social security numbers, home addresses, dates of birth,

or various other documents and/or information belonging to a third party that are considered personal.  The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information.  Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption (b)(7)(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity.  That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation.  Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate.

**Exemption (b)(7)(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact **_XXXXXXXX_**, Trial Attorney, Department of Justice, Civil Division, Federal Programs Branch.

Sincerely,

Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

Enclosure(s)

# Exhibit G

October 6, 2017


Robert A. Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209

Re:    CBP-2017-037684

Dear Mr. Free:

This is a response to your Freedom of Information Act (FOIA) request to U.S. Customs and
Border Protection (CBP), dated March 8, 2017, which seeks records from CBP concerning the
following:

1. All agency records relating to each revocation, suspension, or termination of Global
   Entry System (GES) participation from November 9, 2016 to the date of the agency's
   response to this request.
2. All agency records showing the annual total of revocations, suspensions, or terminations
   of (GES) permissions between January 1, 2012 and November 8, 2017.
3. All agency records showing reversal or confirmation of CBP's GES revocation decisions
   by the CBP Ombudsman's office.
4. Any agency policy, practice, memorandum, training, guidance, communication, or other
   similar record created on or after November 9, 2017 relating to the suspension,
   revocation, or termination of GES.
5. Any agency policy, practice, memorandum, training, communication or other similar
   record created on or after November 9, 2017 that alters, modifies, or in any way affects
   CBP's prior practices and policies with respect to GES screening, investigation, or
   revocation.
6. Any agency records created on or after November 9, 2017 relating to operation or
   functioning of the GES program containing any of the following the words or phrases,
   whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or
   "Travel Ban".

The records included in this response have been deemed responsive to your request.

This release includes a total of 47 pages of records responsive to your clients' request, marked as
EO FOIA CBP 0000000860-0000000890 and 0000000891-0000000907.  CBP has determined
that 46 pages of the records are partially released, pursuant to Title 5 U.S.C. § 552 (b)(6),
(b)(7)(C) and (b)(7)(e) and one page is withheld in full pursuant to (b)(6) and (b)(7)(c).

**Exemption (b)(6)** exempts from disclosure personnel or medical files and similar files the
release of which would cause a clearly unwarranted invasion of personal privacy.  This requires a
balancing of the public's right to disclosure against the individual's right privacy.  The types of
documents and/or information that we have withheld may consist of birth certificates,
naturalization certificates, driver license, social security numbers, home addresses, dates of birth,

or various other documents and/or information belonging to a third party that are considered personal.  The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information.  Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption (b)(7)(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity.  That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation.  Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate.

**Exemption (b)(7)(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Kari D'Ottavio, Trial Attorney, Department of Justice, Civil Division, Federal Programs Branch.

Sincerely,

Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

Enclosure(s)

# Exhibit H

December 14, 2017


Robert A. Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209

Re:     CBP-2017-037684

Dear Mr. Free:

This is a second partial response to your Freedom of Information Act (FOIA) request to U.S. Customs and Border Protection (CBP), dated March 8, 2017, which seeks records from CBP concerning the following:

1. All agency records relating to each revocation, suspension, or termination of Global Entry System (GES) participation from November 9, 2016 to the date of the agency's response to this request.
2. All agency records showing the annual total of revocations, suspensions, or terminations of (GES) permissions between January 1, 2012 and November 8, 2017.
3. All agency records showing reversal or confirmation of CBP's GES revocation decisions by the CBP Ombudsman's office.
4. Any agency policy, practice, memorandum, training, guidance, communication, or other similar record created on or after November 9, 2017 relating to the suspension, revocation, or termination of GES.
5. Any agency policy, practice, memorandum, training, communication or other similar record created on or after November 9, 2017 that alters, modifies, or in any way affects CBP's prior practices and policies with respect to GES screening, investigation, or revocation.
6. Any agency records created on or after November 9, 2017 relating to operation or functioning of the GES program containing any of the following the words or phrases, whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or "Travel Ban".

The records included in this response have been deemed responsive to your request.

This release includes a total of 258 pages of records responsive to your clients' request, marked as CBPBATES00004444 through CBPBATES00004701.  CBP has determined that 258 pages of the records are withheld in part or in full, pursuant to Title 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E).

**FOIA Exemption 5** protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

- **Deliberative Process Privilege**

The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter- or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.

- **Attorney Work-Product Privilege**

The attorney-work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation.

- **Attorney-Client Privilege**

The attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his client based upon, and thus reflecting those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client privilege is not limited to the context of litigation.

**Exemption (b)(6)** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy.  This requires a balancing of the public's right to disclosure against the individual's right privacy.  The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, driver license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.  The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information.  Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption (b)(7)(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity.  That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation.  Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate.

**Exemption (b)(7)(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Kari D'Ottavio, Trial Attorney, Department of Justice, Civil Division, Federal Programs Branch.

Sincerely,

Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

Enclosure(s)

# Exhibit I

January 5, 2018


Robert A. Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209

Re:     CBP-2017-037684

Dear Mr. Free:

This is a final response to your Freedom of Information Act (FOIA) request to U.S. Customs and
Border Protection (CBP), dated March 8, 2017, which seeks records from CBP concerning the
following:

1. All agency records relating to each revocation, suspension, or termination of Global
   Entry System (GES) participation from November 9, 2016 to the date of the agency's
   response to this request.
2. All agency records showing the annual total of revocations, suspensions, or terminations
   of (GES) permissions between January 1, 2012 and November 8, 2017.
3. All agency records showing reversal or confirmation of CBP's GES revocation decisions
   by the CBP Ombudsman's office.
4. Any agency policy, practice, memorandum, training, guidance, communication, or other
   similar record created on or after November 9, 2017 relating to the suspension,
   revocation, or termination of GES.
5. Any agency policy, practice, memorandum, training, communication or other similar
   record created on or after November 9, 2017 that alters, modifies, or in any way affects
   CBP's prior practices and policies with respect to GES screening, investigation, or
   revocation.
6. Any agency records created on or after November 9, 2017 relating to operation or
   functioning of the GES program containing any of the following the words or phrases,
   whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or
   "Travel Ban".

The records included in this response have been deemed responsive to your request.

This release includes a total of 9 pages of records and 25 native excel spreadsheets responsive to
your clients' request, marked as CBPBATES 00008495 – CBPBATES 00008528.  CBP has
determined that 9 pages of records and 25 native excel spreadsheets are partially released,
pursuant to Title 5 U.S.C. § 552 (b)(6), (b)(7)(C) and (b)(7)(E).

**Exemption (b)(6)** exempts from disclosure personnel or medical files and similar files the
release of which would cause a clearly unwarranted invasion of personal privacy.  This requires a
balancing of the public's right to disclosure against the individual's right privacy.  The types of
documents and/or information that we have withheld may consist of birth certificates,

naturalization certificates, driver license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.  The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information.  Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption (b)(7)(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity.  That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation.  Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate.

**Exemption (b)(7)(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Kari D'Ottavio, Trial Attorney, at kari.e.d'ottavio@usdoj.gov or (202) 305-0568. Please refer to case number, CBP-2017-037684, as well as the civil litigation number, 17-cv-00708, in all correspondence about this case.

Sincerely,

Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

Enclosure(s)

Exhibit J

February 15, 2018


Robert A. Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209

Re:     CBP-2017-037684

Dear Mr. Free:

This is an updated final response to your Freedom of Information Act (FOIA) request to U.S.
Customs and Border Protection (CBP), dated March 8, 2017, which seeks records from CBP
concerning the following:

1.  All agency records relating to each revocation, suspension, or termination of Global
    Entry System (GES) participation from November 9, 2016 to the date of the agency's
    response to this request.
2.  All agency records showing the annual total of revocations, suspensions, or terminations
    of (GES) permissions between January 1, 2012 and November 8, 2017.
3.  All agency records showing reversal or confirmation of CBP's GES revocation decisions
    by the CBP Ombudsman's office.
4.  Any agency policy, practice, memorandum, training, guidance, communication, or other
    similar record created on or after November 9, 2017 relating to the suspension,
    revocation, or termination of GES.
5.  Any agency policy, practice, memorandum, training, communication or other similar
    record created on or after November 9, 2017 that alters, modifies, or in any way affects
    CBP's prior practices and policies with respect to GES screening, investigation, or
    revocation.
6.  Any agency records created on or after November 9, 2017 relating to operation or
    functioning of the GES program containing any of the following the words or phrases,
    whether in their singular or plural forms: "Muslim", "Arab", "Ban", "Muslim Ban", or
    "Travel Ban".

The records included in this response have been deemed responsive to your request.

This release includes a total of 61 pages of records which are being re-released with updated
redactions, and one native excel spreadsheet, which is being released for the first time. The
records are being partially released pursuant to Title 5 U.S.C. § 552 (b)(6), (b)(7)(C) and
(b)(7)(E) as follows:

CBPBATES00004480-00004483_UR, CBPBATES00004533_UR, CBPBATES00004561_UR, CBPBATES00004589_UR, CBPBATES00004595_UR, CBPBATES00004603_UR, CBPBATES00004623_UR, CBPBATES00004628_UR were previously released and are being re-released under the same Bates number with an updated suffix "UR" to indicate that the documents are being re-released with updated redactions.

EOFOIACBP0000001458 – 0000001506 is being re-released with updated redactions. It was previously released as EOFOIACBP0000000242-0000000322.

EOFOIACBP0000001507 is being re-released with updated redactions. It was previously released as EOFOIACBP0000000323.

EOFOIACBP0000001508 is the only new release.

**Exemption (b)(6)** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right privacy. The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, driver license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption (b)(7)(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate.

**Exemption (b)(7)(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

As this matter is currently in litigation, if you need further assistance or would like to discuss any aspect of this response, please contact Kari D'Ottavio, Trial Attorney, Department of Justice, Civil Division, Federal Programs Branch.

Sincerely,

Patrick Howard
Branch Chief
U.S. Customs and Border Protection, FOIA Division
Privacy and Diversity Office

Enclosure(s)

# Exhibit K

U.S. Customs and Border Protection | *Vaughn* Document Index for Exemptions (b)(5) and (b)(7)(E)
*American-Arab Anti-Discrimination Committee v. U.S. Customs and Border Protection*, No. 1:17-cv-00708-CRC (D.D.C.)

| Bates Range | Exemption | Description of Material Withheld & Exemptions |
|---|---|---|
| CBPBATES00004446, 00004572, 00004573, 00004637, 00004668, 00004672,  00004675 | (b)(5) | Portions of the records listed at left are exempt from disclosure under FOIA exemption b(5).<br><br>CBP withheld under Exemption (b)(5) draft documents or draft communications.  Specifically, CBP applied Exemption (b)(5) redactions to intra-agency email communications that contained draft language on the impact of E.O. 13,769 on Trusted Traveler Programs. Disclosure of such information could reasonably be expected to have a chilling effect on the open and frank expression of ideas, recommendations, and opinions that occurs when agency officials are discussing and crafting guidance on a time-sensitive issue. |
| EOFOIACBP0000001458-1506 (previously released as 0000000242-322), 0000000885-889, 0000000893-895, 0000000898-907, 0000001508<br><br>CBPBATES00008495,00008498, 00008502, 00008504, 00008505, 00008506 | (b)(7)(E) | Portions of the records listed at left are exempt from disclosure under FOIA exemption (b)(7)(E).  All of these documents are law enforcement records presenting similar information redacted from each record.<br><br>CBP withheld under Exemption (b)(7)(E) certain "internal comments" and certain "Ombudsman comments" from Global Entry revocation records contained in CBP's Global Enrollment System (GES) database. The "internal comments" refer to the specific reasons why CBP revoked an individual's membership. The "Ombudsman comments" refer to the specific reasons why the OMB reversed or sustained a TTP decision to revoke an individual's Global Entry membership.  Disclosure of this information would permit individuals to identify the types of information CBP maintains for assessing risk and permit individuals to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and or effectuate other countermeasures, thus, corrupting the integrity of CBP's approach to risk assessment through ongoing techniques, operations and/or investigations. Specifically, revealing the comments described above would allow individuals to have better insight into what information CBP has, and how that affects eligibility for Trusted Traveler membership, which could reasonably support their efforts to circumvent the law. |

U.S. Customs and Border Protection | *Vaughn* Document Index for Exemptions (b)(5) and (b)(7)(E)
*American-Arab Anti-Discrimination Committee v. U.S. Customs and Border Protection*, No. 1:17-cv-00708-CRC (D.D.C.)

| | | |
|---|---|---|
| CBPBATES00004472, 00004489-4490, 00004495-00004496, 00004501, 00004506-4507, 00004511-00004512, 00004516-4517, 00004521, 00004525, 00004529-4530, 00004533, 00004536-4537, 00004539-4540, 00004542-4543, 00004545, 00004548, 00004550-4551, 00004552, 00004554, 00004558-4559, 00004574, 00004576, 00004578, 00004581, 00004583-4584, 00004587, 00004589, 00004591-4593, 00004595-4596, 00004598, 00004600, 00004602, 00004603, 00004606-4607, 00004609, 00004612, 00004614, 00004618, 00004620, 00004679, 00004681-4682, 00004692-4693;<br><br>EOFOIACBP0000001507 (previously released as 0000000323) | (b)(7)(E) | Portions of the records listed at left are exempt from disclosure under FOIA exemption (b)(7)(E).  All of these documents are law enforcement records presenting similar information redacted from each record.<br><br>CBP applied Exemption (b)(7)(E) to information which relates to CBP's process for assessing risk on travelers seeking to enter the United States.  This includes information regarding ongoing investigations or investigative techniques and procedures.  Disclosure of such information would advise potential violators of CBP's law enforcement techniques and procedures, thereby enabling them to circumvent the law, avoid detection, and evade apprehension.  Moreover, revealing information regarding ongoing investigations would thwart CBP's current law enforcement efforts and risk individuals circumventing CBP's future efforts. |
| EOFOIACBP0000000872, CBPBATES00004480, 00004481, 00004482, 00004483; 00004662; 00008495-8497, 00008500-8501, 00008503-8506; 00008517-8523, 00008526-00008527. | (b)(7)(E) | Portions of the records listed at left are exempt from disclosure under FOIA exemption (b)(7)(E).  All of these documents are law enforcement records presenting similar information redacted from each record.<br><br>CBP withheld under Exemption (b)(7)(E) internal system codes and information related to CBP system interfaces. Disclosure of such information could be used to locate, access, and navigate internal law |

U.S. Customs and Border Protection | *Vaughn* Document Index for Exemptions (b)(5) and (b)(7)(E)
*American-Arab Anti-Discrimination Committee v. U.S. Customs and Border Protection*, No. 1:17-cv-00708-CRC (D.D.C.)

| | | |
|---|---|---|
| | | enforcement computer systems and/or databases and risk compromising the integrity of GES and other CBP systems. |
| CBPBATES00004446-4447, 00004449, 00004464, 00004637-4638, 00004638-4639, 00004668-4669, 00004671-00004672, 00004674-00004675, 00004676, 00004678, 00004696 | (b)(7)(E) | Portions of the records listed at left are exempt from disclosure under FOIA exemption (b)(7)(E).  All of these documents are law enforcement records presenting similar information redacted from each record.<br><br>CBP withheld email addresses of group list serves which are not known to the public and only used within the agency, because disclosure of that information would reveal the means by which CBP communicates law enforcement information and could reasonably be expected to risk compromising the integrity of those email communications. |

# Exhibit L

This document contains all Global Entry revocations and reinstatements from 11/6/16 until 6/6/17.

Case 1:17-cv-00708-SRC Document 15-1 Filed 02/21/18 Page 66 of 70

This doucment is being re-released with updated redactions as EO FOIA CBP 0000001458 - 0000001506.

| Revocation Date | PASSID | Last Name | First Name | Program | Citizenship | Birth Country | Internal Comments | External Comment | Current Status |
|---|---|---|---|---|---|---|---|---|---|
| 11/06/2016 17:13:57 | b6 b7C b6 b7C | | b6 b7C | Global Entry | US | US | b7E | After further review, you do not meet the eligibility requiremen due to a 2014 misdemeanor conviction. | Revoked |
| 11/07/2016 00:00:05 | | | | Global Entry | DE | DE | | Your program membership has been revoked because your 194 Waiver of Inadmissibility document has expired. | Revoked |
| 11/07/2016 08:55:54 | | | | Global Entry | US | US | | You do not meet the strict standards of the program | Revoked |
| 11/07/2016 10:16:54 | | | | Global Entry | US | IN | | You do not meet the strict standards of the program | Revoked |
| 11/07/2016 11:29:09 | | | | Global Entry | US | JP | | Applicant does not meet the strict standards of the progr | Revoked |
| 11/07/2016 11:38:28 | | | | Global Entry | US | US | | Canadian Cancel Membership Message was received on Tu Dec 08 15:17:00 EST 2015 | Revoked |
| 11/07/2016 14:42:25 | | | | Global Entry | US | US | | You do not meet program requirements | Revoked |
| 11/07/2016 19:41:25 | | | | Global Entry | US | AT | | Upon further review you no longer meet the program's eligibili requirements. This is due to your recent arrest in 2016 for DUI that resulted in a misdemeanor conviction for RECKLESS DRIVING. A recent criminal conviction disqualifies you from this program. | Revoked |
| 11/07/2016 19:54:18 | | | | Global Entry | US | US | | Upon further review you no longer meet the program's eligibili requirements due to your recent 2015 arrest for DUI that resulted in a criminal conviction. A recent criminal conviction disqualifies you from this program at this time. | Revoked |
| 11/08/2016 09:20:41 | | | | Global Entry | US | US | | You do not meet the strict standard for the Global Entr Program, based on your 2016 DWI conviction. | Revoked |
| 11/08/2016 09:34:01 | | | | Global Entry | US | US | | You no longer meet program eligibility requirements due to yo recent CBP violation. | Revoked |
| 11/08/2016 09:53:21 | | | | Global Entry | US | PH | | You no longer meet program eligibility requirements due to yo recent CBP violation. | Revoked |
| 11/08/2016 10:36:07 | | | | Global Entry | US | US | | Revoked due to violation of Customs Law | Revoked |
| 11/08/2016 10:43:37 | | | | Global Entry | US | US | | Revoked due to violation of U.S. Customs law | Revoked |
| 11/08/2016 11:15:56 | | | | Global Entry | US | US | | All court documents not presented in the allotted time.  You d not meet the Global Entry strict standards. | Revoked |
| 11/08/2016 11:18:34 | | | | Global Entry | CN | CN | | You no longer meet program eligibility requirements due to yo recent CBP violation. | Revoked |
| 11/08/2016 11:28:38 | | | | Global Entry | US | US | | You no longer meet program eligibility requirements due t pending charges. | Revoked |
| 11/08/2016 12:34:21 | | | | Global Entry | US | US | | You do not meet program eligibility requirement | Revoked |
| 11/08/2016 12:50:29 | | | | Global Entry | US | US | | You do not meet program eligibility requirement | Revoked |
| 11/08/2016 13:18:08 | | | | Global Entry | US | US | | 2X MISD. OFFENSE | Revoked |
| 11/08/2016 13:27:40 | | | | Global Entry | US | US | | You do not meet the Global Entry strict standards:  2010 ¿ LA ¿ CARELESS OPERATION OF A VEHICLE | Revoked |
| 11/08/2016 13:36:52 | | | | Global Entry | US | US | | On 11/16/2016 you attempted to bring your spouse who is not a member of the Trusted Traveler Program through the Global Entry lines at Philadelphia International Aiport without her being cleared by a CBP officer.  In addition, you failed to properly declare purchases made overseas.  Both constitute violations of program rules and your membership is therefore revoked. | Revoked |
| 11/08/2016 13:37:11 | | | | Global Entry | US | US | | Court documents not presented in the allotted time | Revoked |
| 11/08/2016 13:41:13 | | | | Global Entry | US | HK | | You no longer meet program eligibility requirement | Revoked |
| 11/08/2016 13:42:41 | | | | Global Entry | US | US | | You do not meet the Global Entry strict standards:  2014 ¿ LA ¿ RECKLESS OPERATION OF A VEHICLE (RS 14:99) | Revoked |
| 11/08/2016 15:37:59 | | | | Global Entry | US | US | | You no longer meet program eligibility requirements due to yo recent CBP violation. | Revoked |
| 11/08/2016 15:54:58 | | | | Global Entry | US | IR | | Your CBP Agriculture violation w/ penalty on 11/07/2016 at BW Airport makes you ineligible for Trusted Traveler Status. Your membership has been revoked. | Revoked |
| 11/08/2016 16:31:26 | | | | Global Entry | US | US | | You do not meet the requirements for this program due to 198 weapons-related conviction. | Revoked |
| 11/09/2016 11:21:38 | | | | Global Entry | US | US | | You no longer meet program eligibility requirements due to yo recent CBP violation. | Revoked |
| 11/09/2016 13:19:41 | | | | Global Entry | US | US | | You no longer meet program eligibility requirements due to yo recent CBP violation. | Revoked |
| 11/09/2016 14:28:07 | | | | Global Entry | US | IN | | No longer qualifies to be a member of the global entry program | Revoked |
| 11/09/2016 14:34:01 | | | | Global Entry | US | US | | You no longer meet the eligibility requirements for Global Entry. | Revoked |
| 11/09/2016 15:44:51 | | | | Global Entry | US | US | | You no longer meet program eligibility requirements due to yo recent CBP violation. | Revoked |
| 11/09/2016 16:00:14 | | | | Global Entry | US | KR | | You no longer meet program eligibility requirements due to yo recent CBP violation. | Revoked |
| 11/09/2016 16:45:37 | | | | Global Entry | US | US | | Revoked needs to provide court documents relating to crimin offense | Approved |
| 11/09/2016 20:54:25 | | | | Global Entry | US | US | | 1981 DUI.  2012 DUI. | Revoked |
| 11/10/2016 08:15:02 | | | | Global Entry | US | PH | | You no longer meet program eligibility requirement | Revoked |
| 11/10/2016 08:41:10 | | | | Global Entry | CN | CN | | Revoked due to violation of U.S. Customs law | Revoked |
| 11/10/2016 20:31:53 | | | | Global Entry | US | CA | | You no longer meet program eligibility requirement | Revoked |
| 11/10/2016 09:49:54 | | | | Global Entry | US | US | | You no longer meet program eligibility requirement | Revoked |
| 11/10/2016 10:41:27 | | | | Global Entry | US | US | | You no longer meet program eligibility requirement | Revoked |
| 11/10/2016 12:28:45 | | | | Global Entry | US | US | | You no longer meet program eligibility requirement | Revoked |
| 11/10/2016 12:38:27 | | | | Global Entry | MX | MX | | YOU DO NOT MEET PROGRAM REQUIREMENTS. | Revoked |
| 11/10/2016 12:43:13 | | | | Global Entry | US | US | | You do not meet the strict standard for the Global Entr Program. | Revoked |
| 11/10/2016 16:57:28 | | | | Global Entry | US | US | | Applicant does not meet the strict standards of the Global Entr Program. | Revoked |
| 11/11/2016 06:07:26 | | | | Global Entry | US | PK | | Pending court case for 2016 arrest - You no longer meet th program requirements. | Revoked |
| 11/11/2016 20:39:23 | | | | Global Entry | IN | IN | | You do not meet the strict standards of the Trusted Travele Program | Revoked |
| 11/12/2016 09:58:31 | | | | Global Entry | US | BG | | You do not meet program requirement | Revoked |
| 11/12/2016 15:14:38 | | | | Global Entry | US | US | | You do not meet the program eligibility requirement | Revoked |
| 11/13/2016 08:20:06 | | | | Global Entry | US | DE | | No longer qualifies to be a member of the global entry program | Revoked |
| 11/14/2016 08:43:11 | | | | Global Entry | US | JM | | Applicant does not meet Global Entry Trusted Traveler Requirements. | Revoked |
| 11/14/2016 10:17:42 | | | | Global Entry | US | US | | no longer qualifies to be a member of the global entry program | Revoked |
| 11/14/2016 10:26:21 | | | | Global Entry | US | US | | Does not meet Global Entry Trusted Traveler Program | Revoked |
| 11/14/2016 14:29:00 | | | | Global Entry | US | US | | YOU WERE  ARRESTED FOR ASSAULT CAUSES BODILY INJURY FAMILY MEMBER ON 2016-08-04 SOUTHLAKE DPS POLICE SERVICES. Applicant does not meet strict standards for Global Entry membership. CONVICTED OF DRIVING WHILE INTOXICATED ON 1/27/2016.Final Pleading: NO CONTEST OR NOLO CONTENDERE. | Revoked |
| 11/14/2016 15:05:03 | | | | Global Entry | US | ZA | | Applicant does not meet strict standards for Global Entry membership. | Revoked |
| 11/14/2016 15:19:57 | | | | Global Entry | US | US | | You do not meet the program eligibility requirement | Revoked |
| 11/14/2016 15:28:22 | | | | Global Entry | US | IL | | Arrested  2016-04-07,St. Louis County PD, POSSESSION OF CHILD PORNOGRAPHY,CLASSIFICATION: C  FELONY. Applicant does not meet strict standards for Global Entry membership. | Revoked |
| 11/14/2016 16:07:07 | | | | Global Entry | US | US | | You no longer meet the program eligibility requirement | Revoked |
| 11/14/2016 16:11:54 | | | | Global Entry | US | US | | You no longer meet the requirements for this program. You were in possession of an undeclared quantity of medications. | Revoked |
| 11/14/2016 16:59:44 | | | | Global Entry | US | TW | | On 11/1/2016 you were issued a $500 penalty for  failing t declare : 2 whole pummelo fruits.Applicant does not meet strict standards for Global Entry membership. | Revoked |
| 11/14/2016 17:37:01 | | | | Global Entry | US | US | | Applicant does not meet the strict standards of the Global Entr Program. | Approved |
| 11/15/2016 08:11:41 | | | | Global Entry | US | DE | | Payment Reversal | Approved |
| 11/15/2016 13:54:50 | | | | Global Entry | KR | KR | | You do not meet the program eligibility requirement | Approved |
| 11/15/2016 13:56:24 | | | | Global Entry | KR | KR | | You do not meet the program eligibility requirement | Approved |
| 11/15/2016 13:58:27 | | | | Global Entry | US | US | | You do not meet the program eligibility requirement | Approved |
| 11/15/2016 14:03:14 | | | | Global Entry | US | US | | You do not meet the program eligibility requirement | Approved |
| 11/15/2016 14:06:07 | | | | Global Entry | US | CU | | You do not meet the program eligibility requirement | Approved |
| 11/15/2016 14:07:59 | | | | Global Entry | US | MX | | You do not meet the program eligibility requirement | Approved |
| 11/15/2016 14:12:35 | | | | Global Entry | US | IL | | You do not meet the program eligibility requirement | Approved |
| 11/15/2016 14:17:17 | | | | Global Entry | US | US | | You do not meet the program eligibility requirement | Approved |

| | |
|---|---|
| **From:** | (b)(6), (b)(7)(C) |
| **Sent:** | Wednesday, February 01, 2017 9:26 PM |
| **To:** | (b)(6), (b)(7)(C) |
| **Cc:** | (b)(6), (b)(7)(C) |
| **Subject:** | RE: TTP Requirements Request - Executive Order: Revoked List US... |
| **Attachments:** | Revoked_list-2-1-2017-only.xlsx; Denied_list-2-1-2017-only.xlsx |

Please see the lists for 2-1-2017. Thanks!

**From:** (b)(6), (b)(7)(C)
**Sent:** Wednesday, February 01, 2017 7:42 PM
**To:** (b)(6), (b)(7)(C)

# (b)(6), (b)(7)(C)

**Cc:** (b)(6), (b)(7)(C)
**Subject:** RE: TTP Requirements Request - Executive Order: Revoked List US...

Adding (b)(6), (b)(7)(C) see below

# (b)(6), (b)(7)(C)

Director, I-Solutions Division
DHS/CBP/OIT/PSPD
(b)(6), (b)(7)(C) (office)
(cell)
(b)(6), (b)(7)(C)

**From:** (b)(6), (b)(7)(C)
**Sent:** Wednesday, February 1, 2017 7:39 PM
**To:** (b)(6), (b)(7)(C)
(b)(6), (b)(7)(C)
**Cc:** (b)(6), (b)(7)(C)
**Subject:** RE: TTP Requirements Request - Executive Order: Revoked List US...

On the sheets (b)(6), (b)(7)(C) needs to be able to see the individual's US or Canadian LPR status. That field isn't there. Can we get a re-run with the US LPR or Canada LPR status first thing in the am?

**From:** (b)(6), (b)(7)(C)
**Sent:** Wednesday, February 01, 2017 6:55:19 PM
**To:** (b)(6), (b)(7)(C)
**Subject:** FW: TTP Requirements Request - Executive Order: Revoked List US...

I posted one on Sharepoint. I don't have (b)(6), (b)(7)(C) cell phone. Can someone let her know.

# (b)(7)(E)

CBPBATES00004480_UR

**(b)(6), (b)(7)(C)**

Project Lead for GES, GOES, Payment Service
Contractor Supporting:
Department of Homeland Security
CBP/OIT/PSPD/I-Solutions

(b)(6), (b)(7)(C) (office)
(cell)

**(b)(6), (b)(7)(C)**

**(b)(6), (b)(7)(C)**

**From:** CBPNET TECHSUPPORT
**Sent:** Wednesday, February 01, 2017 6:51 PM
**To:** (b)(6), (b)(7)(C)
**Subject:** TTP Requirements Request - Executive Order: Revoked List US...

Trusted Traveler

# *Executive Order: Revoked List US...* has been added

Modify my alert settings | View Executive Order: Revoked List US... | View TTP Requirements Request - NEW | Mobile View

| | |
|---|---|
| Title: | Executive Order: Revoked List US LPR or CA LIC |
| Requestor: | (b)(6), (b)(7)(C) |
| Requirement Type: | Business |
| Priority: | High |
| Ranking by Priority: | |
| Requirement Description: | x |
| Affected System: | GES |
| Requirement Status: | Draft |
| Dependency: | |
| Assigned To: | |
| Proposed Solution: | |
| Solution Details: | |
| Related Requirement(s): | |
| Action Items: | |
| Comments: | |
| Project Number: | |
| Requirement Number: | |
| (b)(7)(E) | |
| Needed By Date: | |
| Scheduled Date: | |
| Completed Date: | |

**(b)(6), (b)(7)(C)**

2

CBPBATES00004481_UR

**From:** (b)(6), (b)(7)(C)
**Sent:** Wednesday, February 01, 2017 8:16 PM
**To:** (b)(6), (b)(7)(C)

(b)(6), (b)(7)(C)

**Cc:**
**Subject:** RE: TTP Requirements Request - Executive Order: Revoked List US...
**Attachments:** 8PM-Revoked_list-1-31-2017-only.xlsx; 8PM-Denied_list-1-31-2017-only.xlsx

Please see attached.
Please note the list only contains the records updated yesterday. I can provide today's of course. I think it is a good idea to separate them.  Thanks!

---

**From:** (b)(6), (b)(7)(C)
**Sent:** Wednesday, February 01, 2017 7:42 PM
**To:** (b)(6), (b)(7)(C)

(b)(6), (b)(7)(C)

**Cc:** (b)(6), (b)(7)(C)
**Subject:** RE: TTP Requirements Request - Executive Order: Revoked List US...

Adding (b)(6), (b)(7)(C) ee below

(b)(6), (b)(7)(C)

Director, I-Solutions Division
DHS/CBP/OIT/PSPD
(b)(6), (b)(7)(C) (office)
(cell)

(b)(6), (b)(7)(C)

---

**From:** (b)(6), (b)(7)(C)
**Sent:** Wednesday, February 1, 2017 7:39 PM
**To:** (b)(6), (b)(7)(C)

(b)(6), (b)(7)(C)

**Cc:** (b)(6), (b)(7)(C)
**Subject:** RE: TTP Requirements Request - Executive Order: Revoked List US...

On the sheets (b)(6), (b)(7)(C) needs to be able to see the individual's US or Canadian LPR status. That field isn't there. Can we get a re-run with the US LPR or Canada LPR status first thing in the am?

---

**From:** (b)(6), (b)(7)(C)
**Sent:** Wednesday, February 01, 2017 6:55:19 PM
**To:** (b)(6), (b)(7)(C)
**Subject:** FW: TTP Requirements Request - Executive Order: Revoked List US...

I posted one on Sharepoint. I don't have (b)(6), (b)(7)(C) cell phone. Can someone let her know.

CBPBATES00004482_UR

**(b)(7)(E)**

**(b)(6), (b)(7)(C)**
Project Lead for GES, GOES, Payment Service
Contractor Supporting:
Department of Homeland Security
CBP/OIT/PSPD/I-Solutions
**(b)(6), (b)(7)(C)** (office)
(cell)
**(b)(6), (b)(7)(C)**
**(b)(6), (b)(7)(C)**

---

**From:** CBPNET TECHSUPPORT
**Sent:** Wednesday, February 01, 2017 6:51 PM
**To:** **(b)(6), (b)(7)(C)**
**Subject:** TTP Requirements Request - Executive Order: Revoked List US...

Trusted Traveler

# *Executive Order: Revoked List US...* has been added

Modify my alert settings | View Executive Order: Revoked List US... | View TTP Requirements Request - NEW | Mobile View

| | |
|---|---|
| **Title:** | Executive Order: Revoked List US LPR or CA LIC |
| **Requestor:** | **(b)(6), (b)(7)(C)** |
| **Requirement Type:** | Business |
| **Priority:** | High |
| **Ranking by Priority:** | |
| **Requirement Description:** | x |
| **Affected System:** | GES |
| **Requirement Status:** | Draft |
| **Dependency:** | |
| **Assigned To:** | |
| **Proposed Solution:** | |
| **Solution Details:** | |
| **Related Requirement(s):** | |
| **Action Items:** | |
| **Comments:** | |
| **Project Number:** | |
| **Requirement Number:** | **(b)(7)(E)** |
| **Needed By Date:** | |
| **Scheduled Date:** | |
| **Completed Date:** | |
| | **(b)(6), (b)(7)(C)** |

2

CBPBATES00004483_UR